799 F.2d 1128
 55 USLW 2146, 5 Fed.R.Serv.3d 1248,
Prod.Liab.Rep.(CCH)P 11,127
 George J. KOCHINS, Curator of the Estate of John G. Kochins,
Plaintiff- Appellant,
v.
LINDEN-ALIMAK, INC.; Heede International, Inc.;
Linden-Alimak, A.B. of Skellestea, Sweden; Roy Howard;
Bobby Franklin Bevels; Jerry W. Pitcock; Art Armstrong;
and Mine Safety Appliances Company, Defendants-Appellees.
 No. 85-5148.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 21, 1986.
Decided Sept. 2, 1986.
Rehearing Denied Oct. 6, 1986.
 
 Herbert S. Sanger, Jr, Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Edwin W. Small (argued), Edward M Joffe, Tennessee Valley Authority, Knoxville, Tenn., Thomas I. Carlton, Jr., W. Gregory Miller (argued), Cornelius & Collins, Douglas Fisher (argued), Nashville, Tenn., for defendants-appellees.
 John W. deGravelles, Due, Dodson, deGravelles, Robinson and Caskey, Baton Rouge, La., Rachel L. Steel (argued), Farris, Warfield & Kanaday, Nashville, Tenn., for plaintiff-appellant.
 Before ENGEL, KENNEDY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 In this products liability-negligence action, based on diversity jurisdiction, the appellant challenges, on several grounds, the district court's orders granting summary judgment to defendants, Linden-Alimak, Inc., Linden-Alimak, A.B. of Skellestea, Sweden, and Heede International Inc. (the Linden-Alimak defendants), and to defendants Arthur Armstrong, Roy Howard, Bobby Bevels, and Jerry Pitcock (the individual defendants). Summary judgment was granted to the Linden-Alimak defendants based upon Tennessee's ten-year statute of repose for product liability actions, Tenn. Code Ann. Sec. 29-28-103 (1980), and to the individual defendants on the ground that under Tennessee law they enjoy immunity against personal liability for allegedly negligent acts arising out of their employer's nondelegable duty to provide a safe place to work.
 
 
 2
 Appellant contends that the summary judgment in favor of the Linden-Alimak defendants is improper because (1) a genuine issue of material fact exists as to when the product which injured John G. Kochins, a sheave guard on a hoist, was sold by the Linden-Alimak defendants to Mr. Kochins' employer, the Tennessee Valley Authority (TVA); (2) an instruction manual for the hoist sold to TVA by the Linden-Alimak defendants constitutes a separate product, and the statute of repose should begin running when the manual was received by TVA in 1980 and not when the hoist was received in 1970; and (3) the statute of repose is unconstitutional because it violates the equal protection guarantees of the United States and Tennessee constitutions, as well as art. I, Sec. 17, the "open courts" provision, of the Tennessee constitution.
 
 
 3
 Appellant also contends that summary judgment was improperly granted to the individual defendants because their allegedly negligent acts are not within the Tennessee rule that an employer has a non-delegable duty to provide a safe place to work.
 
 
 4
 We hold that Sec. 29-28-103 is constitutionally valid and we affirm the summary judgments in favor of the Linden-Alimak defendants and the individual defendants.
 
 I.
 
 5
 On February 9, 1981, John G. Kochins, an ironworker employed by the TVA at its Hartsville nuclear power plant, while participating in the disassembly of a personnel hoist, suffered severe brain damage and other injuries when he was struck on the head by a sheave guard which fell thirty feet from the top of the hoist which was manufactured by Linden-Alimak, A.B. of Skellestea, Sweden. The hoist was a Heede Alihoist Model II-B, one of two such hoists sold to the TVA by Heede International, Inc., Linden-Alimak, Inc.'s predecessor,[1] by contract dated July 2, 1970. The hoist involved in the accident bore serial number 328, and is the only Alihoist elevator that has ever been at the Hartsville nuclear plant.
 
 
 6
 The TVA accepted delivery of the hoist on August 14, 1970, but it was used at other nuclear plants until 1978 when it was shipped to the Hartsville plant, disassembled. In December, 1980, the hoist was retrieved for assembly from the storage yard where it had been stored for several years.
 
 
 7
 Defendant Arthur Armstrong is the safety supervisor at the Hartsville plant. Defendant Jerry Pitcock was selected as foreman in charge of the assembly crew, of which John Kochins was a member. Defendants Howard and Bevels, ironworker superintendent and assistant ironworker superintendent, respectively, discussed the assembly procedure with Pitcock, and an instruction manual provided by the manufacturer was used in assembling the hoist. Two months later, when it became necessary to move the hoist, Howard directed Bevels to instruct the same crew to disassemble it. The crew was directed to disassemble the hoist by reversing the assembly procedure. Of the individual defendants, only Pitcock was present during the disassembly.
 
 
 8
 The district court described the disassembly process leading to the accident:
 
 
 9
 When the disassembly began, the first step was to lower the counterweight, which was at the top of the hoist, to the ground. It was necessary to utilize a crane and a crane operator to accomplish this task. Crewmember Randall Hickman was standing on top of the hoist and attached the crane hook to the counterweight. Pitcock and apprentice ironworker Arlene Gregory were on the ground and plaintiff was standing atop the cage of the hoist. Hickman then signalled the crane operator to begin lowering the counterweight. Plaintiff was to signal the counterweight down once it left Hickman's line of sight. As the counterweight was being lowered, the wire rope running through the pulley dislodged a metal sheave guard fastened over the pulley. The sheave guard fell from the top of the hoist frame and struck plaintiff, causing the personal injuries for which recovery is sought in this action.
 
 
 10
 On June 24, 1981, plaintiff-appellant George Kochins, brother and curator of John Kochins, brought this action on his brother's behalf against the Linden-Alimak defendants, alleging theories of negligence, breach of warranties, strict liability, and other statutory and contractual violations. The complaint was later amended to add the individual defendants, whom appellant alleged were negligent in various respects.[2]
 
 
 11
 On October 7, 1982, and November 18, 1982, after extensive discovery, the Linden-Alimak defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56(c), on the ground that there was no genuine issue as to any material fact, and defendants were entitled to summary judgment as a matter of law because the action is barred by the Tennessee ten-year statute of repose. Tenn. Code Ann. Sec. 29-28-103. On December 8, 1982, the district court granted summary judgment for the Linden-Alimak defendants, rejecting appellant's challenges to Sec. 29-28-103 under the United States and Tennessee Constitutions, and holding that the action was barred by the statute.
 
 
 12
 Thereafter, the individual defendants moved for summary judgment, and the district court granted their motion on the ground that, under Tennessee law, plaintiff's allegations of negligence related to the employer's non-delegable duty to provide a safe place to work and that the individual defendants therefore enjoyed immunity against personal liability. The judgments in favor of the Linden-Alimak defendants and the individual defendants were certified by the district court as final and appealable orders pursuant to Fed.R.Civ.P. 54(b), and this appeal followed.
 
 II.
 
 13
 Appellant argues that the district court erred in granting summary judgment in favor of the Linden-Alimak defendants based on the Tennessee products liability statute of repose. The statute provides:
 
 
 14
 (a) Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by Secs. 28-3-104, 28-3-105, 28-3-202 and 47-2-725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner.
 
 
 15
 (b) The foregoing limitation of actions shall not apply to any action resulting from exposure to asbestos.
 
 
 16
 Tenn. Code Ann. Sec. 29-28-103.
 
 
 17
 Appellant concedes that the hoist was purchased and received by the TVA more than ten years prior to the date Kochins was injured, but contends that a genuine issue of material fact exists as to when the allegedly defective component part, the sheave guard, was delivered to the TVA.[3] All parties agree that the technical plans and the drawings for the Alihoist Model II-B that is involved in this case do not show the sheave guard as part of the equipment, and that the drawings for a different model, Alihoist Model III, do show such a sheave guard. Further, appellant asserts that the sheave guard does not appear on the spare parts list for either the Model II-B or the Model III, and that the instruction manual for the Model II-B hoist makes no reference to the sheave guard either in the text or in the illustrations. Appellant suggests that it may be concluded therefrom that the sheave guard was not on the hoist when it was originally delivered to the TVA in 1970.
 
 
 18
 The district court agreed with appellant that "it is not clear that the defendants provided sheave guards on the model II-B when purchased by TVA." However, the court concluded that, in light of the ten-year statute of repose, whether a sheave guard was or was not provided in August, 1970, was not a material issue of fact. Rather, the court found that the material time period was the post-1970 period: "Only if the plaintiff can show a disputed issue of fact post-1970 should summary judgment be denied." The court then found that the Linden-Alimak defendants had established through the affidavit of Lillian Amendola that "none of the defendants have [sic] ever sold replacement sheave guards or repair parts for sheave guards to TVA after the initial sale of equipment in 1970."
 
 
 19
 In her affidavit, Ms. Amendola, the custodian of the records of Linden-Alimak, Inc., and its predecessor Heede International, Inc., stated:
 
 
 20
 * * *
 
 
 21
 * * *2. In the ordinary course of business, the corporation maintains a record of all repair and replacement parts sent to each customer on each piece of equipment sold by Linden-Alimak, Inc. or Heede International, Inc.
 
 
 22
 3. I have reviewed all records maintained by Heede International, Inc. and Linden-Alimak, Inc. regarding the two Heede-Alihoist Model II B personnel-materials hoists sold by Heede International, Inc. to TVA by contract dated July 2, 1970, said pieces of equipment assigned manufacturer's serial numbers 327 and 328. There is no record of any sheave guards having ever been sold to Tennessee Valley Authority by Heede International, Inc. or Linden-Alimak, Inc. to be used as replacement sheave guards on either of the two Alihoist elevators, and specifically not for unit 328, since the initial sale of the equipment.
 
 
 23
 4. Furthermore, my review of the records shows no parts were sold to TVA as repair or replacement parts for this unit that would be used for repair or replacement of parts associated with the sheave guards.
 
 
 24
 The district court found that appellant had failed to produce any countervailing affidavits, depositions, or other evidence showing that, during the post-1970 period, there was a dispute as to whether defendants provided sheave guards or repair parts to TVA. The court found that Ms. Amendola's affidavit was undisputed, and that the appellant had failed to present "any conceivable basis to conclude that there is a triable issue of fact on whether the defendants provided sheave guards after the initial sale in 1970."
 
 
 25
 Rule 56(c) provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides, in pertinent part:
 
 
 26
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 
 
 27
 A summary judgment movant bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 158-59, 90 S.Ct. 1598, 1608, 1608-09, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. denied, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); United States v. Articles of Device, etc., 527 F.2d 1008, 1011 (6th Cir.1976). "Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir.1962); Smith, 600 F.2d at 63; Articles of Device, 527 F.2d at 1011.
 
 
 28
 In First National Bank v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), the Supreme Court stated:
 
 
 29
 It is true that the issue of material fact required by Rule 56(e) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.
 
 
 30
 Rule 56(e) does not require a party "to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." Smith, 600 F.2d at 64; Felix v. Young, 536 F.2d 1126, 1134-35 (6th Cir.1976); Adickes, 398 U.S. at 159-60, 90 S.Ct. at 1609-10. However,
 
 
 31
 [t]he thrust of Rule 56(e) is that a party may not simply rest on the allegations in his pleadings in opposing a motion for summary judgment. Adickes v. Kress & Co., supra, 398 U.S. at 159 n. 19 [90 S.Ct. at 1609 n. 19].... Plaintiffs are not entitled "to get to the jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial...." First National Bank [391 U.S. at 289-90, 88 S.Ct. at 1593].
 
 
 32
 Smith, 600 F.2d at 64-65.
 
 
 33
 Applying these standards to the case before us, we conclude that the district court properly held that the Linden-Alimak defendants established the absence of any genuine issue of material fact with respect to the date the sheave guard which injured Mr. Kochins was sold to the TVA. Appellant contends that the Linden-Alimak defendants were not entitled to summary judgment because the Amendola affidavit states only that no "repair or replacement" sheave guards were sold to the TVA since the initial sale of the hoist. Essentially, appellant argues that this affidavit cannot be interpreted to mean that the Linden-Alimak defendants did not sell any sheave guards to the TVA during the time period in question, as distinguished from repair or replacement sheave guards for this particular hoist. The Linden-Alimak defendants, on the other hand, contend that the affidavit proves that no sheave guard whatsoever, whether repair, replacement, or original equipment, was sold to the TVA for use on this hoist since the initial sale of the equipment, and that the "repair or replacement" language of the affidavit merely reflects the semantics of a shipping department employee. Defendants also contended at oral argument that the issue of the precise language used in the affidavit was not raised by appellant in the district court.
 
 
 34
 We agree with the district court that Rule 56(e) requires that, in order to successfully meet defendant's motion for summary judgment supported by the Amendola affidavit, appellant was required to set forth, in his response, specific facts showing that there was a genuine issue for trial. The most appellant has done, however, after extensive discovery, is speculate as to when the sheave guard in question might have been sold to the TVA.[4] While appellant is not required to resolve this issue conclusively, he must present "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." First National Bank, 391 U.S. at 289, 88 S.Ct. at 1592. It is evidence that must be produced, however, not merely a theoretical argument suggesting the logical possibility of the existence of facts pointing to a different conclusion.
 
 
 35
 We think the Linden-Alimak defendants have established that there is no genuine issue about the fact that no sheave guards were sold to TVA for use on the hoist in question, subsequent to the initial sale of the hoist and within ten years of the date suit was filed.[5]
 
 III.
 
 36
 Appellant next contends that his lawsuit is not time barred by the Tennessee ten-year statute of repose because the Linden-Alimak defendants sold TVA an instruction manual for the hoist in 1980, and the instruction manual is a "product," as defined in the Tennessee Products Liability Act.
 
 
 37
 Understandably, perhaps, there are no Tennessee state court decisions addressing this point. In the absence of any interpretative guidance from the state courts of Tennessee, we must determine, as best we can, how we think the Tennessee Supreme Court would interpret the statute if presented with this issue. See Adair v. Koppers Co., Inc., 741 F.2d 111, 113 (6th Cir.1984).
 
 
 38
 The Tennessee Products Liability Act, Tenn. Code Ann. Sec. 29-28-102, contains the following pertinent definitions:
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 (5) "Product" means any tangible object or goods produced.
 
 
 42
 (6) "Product liability action" for purposes of this chapter shall include all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort, negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.
 
 
 43
 The Tennessee Supreme Court has consistently stated that the words of a statute are to be taken in a natural and ordinary sense, without any forced or subtle construction to limit or extend their meaning. Hall Contracting Corp. v. Tidwell, 507 S.W.2d 697, 698 (Tenn.1974); Tennessee Blacktop, Inc. v. Benson, 494 S.W.2d 760, 765 (Tenn.1973); Moto-Pep, Inc. v. McGoldrick, 202 Tenn. 119, 303 S.W.2d 326 (1957); Wingfield v. Crosby, 45 Tenn. 241, 5 Cold. 241 (1867). We do not think that the Tennessee Supreme Court would interpret the word "product," as defined and used in the statutory provisions quoted above, to include the instruction manual furnished to TVA in 1980. Although the definition of a "product liability action" includes actions based upon the "warning" or "instruction ... of any product," Tenn. Code Ann. Sec. 29-28-102(6), and, while a failure to warn or provide proper instructions are theories upon which a plaintiff may proceed, the instructions themselves are not a "product" as defined by the act. While we agree that, under Tennessee law, a manufacturer's failure to provide proper warnings or adequate instructions for the use of its product may render the product defective or unreasonably dangerous in use, even if the product contains no manufacturing or design defects, Young v. Reliance Electric Co., 584 S.W.2d 663, 668 (Tenn.App.1979), we do not agree that the warnings and instructions themselves are a "product" within the meaning of Sec. 29-28-103. Language of instruction cannot be "defective or unreasonably dangerous" in itself.[6]
 
 
 44
 We agree, therefore, with the district court that appellant is time barred from proceeding against the Linden-Alimak defendants.
 
 IV.
 
 45
 Appellant contends that Sec. 29-28-103 violates the equal protection guarantees of the United States and Tennessee constitutions, U.S. Const. amend. XIV; Tenn. Const. art. XI, Sec. 8, as well as the "open courts" provision of the Tennessee constitution, Tenn. Const. art. I, Sec. 17. In Mathis v. Eli Lilly & Co., 719 F.2d 134 (6th Cir.1983), we upheld the constitutionality of Sec. 29-28-103 against a challenge brought under the due process clause of the fourteenth amendment to the United States constitution. We expressly noted in Mathis, that appellants there raised no equal protection claim under the fourteenth amendment, and we "intimate[d] no opinion on the constitutionality of the challenged statutes on other grounds, not raised and not discussed." Id. at 136, 141.
 
 
 46
 We now hold that Sec. 29-28-103 does not deny equal protection under the United States or Tennessee constitutions, and does not violate the "open courts" provision of the Tennessee constitution.
 
 A. Equal Protection
 
 47
 The parties agree that, because the legislative classifications in Sec. 29-28-103 implicate neither a fundamental right nor a suspect class calling for heightened judicial scrutiny, the proper equal protection analysis involves application of the rational basis standard. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid." Id. at 314, 96 S.Ct. at 2567 (citation omitted). We have said previously that "state legislatures are presumed by federal courts to have acted constitutionally in making laws." Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy, 740 F.2d 1362, 1366 (6th Cir.1984). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). If a legislative classification "rationally furthers the purpose identified by the State," it does not violate the equal protection clause. Murgia, 427 U.S. at 314, 96 S.Ct. at 2567; Darks v. City of Cincinnati, 745 F.2d 1040, 1042-43 (6th Cir.1984).
 
 
 48
 The Tennessee Supreme Court has employed a similar equal protection analysis under article XI, Sec. 8, of the Tennessee constitution. Harrison v. Schrader, 569 S.W.2d 822, 825-26 (Tenn.1978):
 
 
 49
 The test to be applied has been set forth in numerous cases. The classification must rest upon a reasonable basis. If it has a reasonable basis, it is not unconstitutional merely because it results in some inequality. Reasonableness depends upon the facts of the case and no general rule can be formulated for its determination. Estrin v. Moss, 221 Tenn. 657, 430 S.W.2d 345 (1968); Motlow v. State, 125 Tenn. 547, 145 S.W. 177 (1912).
 
 
 50
 The burden of showing that a classification is unreasonable and arbitrary is placed upon the individual challenging the statute; and if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld. Swain v. State, 527 S.W.2d 119 (Tenn.1975); Estrin, supra; Phillips v. State, 202 Tenn. 402, 304 S.W.2d 614 (1957).
 
 
 51
 Before the classification will be held to violate the equal protection guaranty, it must be shown that it has no reasonable or natural relation to the legislative objective. City of Chattanooga [v. Harris, 223 Tenn. 51, 442 S.W.2d 602 (1969) ]; Phillips, supra. In addition, the statute must apply alike to all who fall within, or can reasonably be brought within the classification. Massachusetts Mutual Life Insurance Co. v. Vogue, Inc., 54 Tenn.App. 624, 393 S.W.2d 164 (1965).
 
 
 52
 Appellant finds several classifications in Sec. 29-28-103 that are said to violate the equal protection principles discussed above. He contends that the statute of repose implicitly and unreasonably distinguishes between manufacturers and nonmanufacturers, such as those involved in the inspection, repair, or maintenance of products; between products with useful lives of more than ten years and those with useful lives of less than ten years; and explicitly distinguishes between plaintiffs alleging asbestos-related injuries and those injured by other products. We address, in turn, those classifications to which appellant objects.
 
 
 53
 We are met at the threshold, however, with the contention by the Linden-Alimak defendants that, with respect to the distinction between manufacturers and non-manufacturers, appellant has no standing to assert the constitutional rights of other potential defendants, citing Adair v. Koppers Co., Inc., 541 F.Supp. 1120, 1129-30 (N.D.Ohio 1982) (opinion by Judge Krupansky, sitting by designation), aff'd, 741 F.2d 111 (6th Cir.1984). The standing doctrine incorporates both the constitutional requirement under Article III of the United States Constitution that a complaining party must be injured in fact, and other so called "prudential limitations." Allstate Insurance Co. v. Wayne County, 760 F.2d 689, 692-93 (6th Cir.1985). "Perhaps the most prominent of these prudential limitations is that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " Id. at 693 (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).
 
 
 54
 Courts do not decide cases based on the rights of third parties because "it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not," and "third parties themselves usually will be the best proponents of their own rights." Singleton v. Wulff, 428 U.S. 106, 113-14, 96 S.Ct. 2868, 2873-74, 49 L.Ed.2d 826 (1976). However, a party will be allowed to assert the rights of third persons "[w]here practical obstacles prevent a party from asserting rights on behalf of itself," if the party can demonstrate "injury in fact" as required by Art. III and "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." [Secretary of State of Maryland v. ] Joseph H. Munson Company, Inc., [467 U.S. 947, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984) ].
 
 
 55
 Allstate Insurance Co., 760 F.2d at 693 (footnote omitted).
 
 
 56
 In Adair, plaintiff, who was injured while operating a conveyor, challenged on equal protection grounds an Ohio ten-year statute of repose for actions based on defective improvements to real property, contending that it denied equal protection to certain classes of potential defendants. Judge Krupansky concluded that "the policies and philosophies underlying [the] limited departures from the general rule that a litigant may not assert the constitutional rights of third persons are inapplicable to the instant litigation and that Adair has no standing to present the instant equal protection challenge." 541 F.Supp. at 1130.
 
 
 57
 If appellant's equal protection challenge involved only the statute's classification between manufacturers and other potential defendants, we might agree that appellant would have no standing to make such a challenge. However, there are several facets to appellant's equal protection argument, and the others involved not third parties' rights, but appellant's rights as curator of his brother's estate. Therefore, we conclude that appellant has standing to raise these equal protection arguments.
 
 
 58
 Turning to the substance of appellant's contention that Sec. 29-28-103 irrationally distinguishes between manufacturers and other potential product liability defendants, we note that the Supreme Court has said that "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. It is enough that the State's action be rationally based and free from invidious discrimination." Dandridge v. Williams, 397 U.S. 471, 486-87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) (citation omitted). The Tennessee legislature's decision to restrict the Sec. 29-28-103 ten-year statute of repose to product manufacturers and sellers has a rational basis, and the basis is found in the preamble[7] to the statute wherein the legislature expressed concern about "[t]he effect of increased insurance premiums and increased claims" upon the cost of products as a result of "manufacturers, wholesalers and retailers passing the cost of the premium to the consumer," and about "certain product manufacturers [being] discouraged from continuing to provide and manufacture such products because of the high cost and possible unavailability of product liability insurance." We cannot say that the legislature's decision to limit Sec. 29-28-103 to those defendants in the manufacturing and distribution chain, who have control over the cost and availability of products, is irrational.
 
 
 59
 Appellant insists, however, that the statute of repose denies equal protection because it bars actions by persons injured by products having intended useful lives of more than ten years. Essentially, the argument is that the statute, instead of imposing an arbitrary ten-year limitations period, should contain a limitations period determined by the useful life of the product. However, "[a]ny statute of repose or limitation involves setting an arbitrary time period within which an action is to be brought," Mathis, 719 F.2d at 140, and, in applying the rational basis standard, we must remember that "the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." Murgia, 427 U.S. at 314, 96 S.Ct. at 2567. The Tennessee legislature determined that a products liability action "must be brought within ten ... years from the date on which the product was first purchased for use or consumption, or within one ... year after the expiration of the anticipated life of the product, whichever is the shorter." Tenn.Code Ann. Sec. 29-28-103(a) (emphasis added). We cannot say that the legislative "line drawing" decision to adopt a ten-year limitation period is arbitrary or irrational. See Stutts v. Ford Motor Co., 574 F.Supp. 100, 104-05 (M.D.Tenn.1983). Moreover, the contention that plaintiffs injured outside the ten-year period are unconstitutionally denied access to the courts, was thoroughly analyzed and rejected in Mathis, 719 F.2d at 141.[8]
 
 
 60
 Appellant also objects, on equal protection grounds, to the classification that results from the language of subsection (b) of Sec. 29-28-103 that exempts asbestos-related injuries from the ten-year limitation.
 
 That provision states:
 
 61
 (b) The foregoing limitation of actions shall not apply to any action resulting from exposure to asbestos.
 
 
 62
 Whether there is a rational basis for treating asbestos injury plaintiffs and other injury plaintiffs differently, as respects the statute of repose, requires a preliminary determination whether the two groups of plaintiffs are sufficiently similarly situated to be of the same class in light of the legislative purpose. We think they are not. It is a fundamental precept of equal protection analysis that a legislative classification does not violate equal protection guarantees "when it distinguishes persons as 'dissimilar' upon some permissible basis in order to advance the legitimate interests of society. Those who are treated less favorably by the legislation are not denied equal protection of the law because they are not similarly situated to those who receive the benefit of the legislative classification." J. Nowak, R. Rotunda & J.N. Young, Handbook on Constitutional Law, 519 (West 1978).
 
 
 63
 The injuries suffered by Mr. Kochins are not analogous to asbestos-related injuries in that, instead of developing over the years from exposure to a hazardous substance, they were the result of a sudden, catastrophic accident. Mr. Kochins, whose injuries followed instantly upon the alleged carelessness that caused them, is not similarly situated with persons suffering asbestos-related injuries which ordinarily are first manifested long after the exposure which causes them, and usually following a long period of latency.
 
 
 64
 But even if those differences do not define dissimilar classes of plaintiffs, we think the statute's exemption of asbestos-related injuries has a rational basis if only because such injuries often take considerably longer than ten years to manifest themselves. See Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir.1981), in which we observed "asbestosis is an insidious disease which sometimes manifests itself many years after exposure to asbestos."
 
 
 65
 In Wayne, the plaintiffs, who suffered phosphate/slag-related injuries, challenged the constitutionality of Sec. 29-28-103 arguing that there was no rational basis for exempting asbestos injuries from the ten-year statute of repose. A Fifth Circuit panel rejected the challenge, declaring that the exception from the ten-year statute of repose for products liability actions for "any action resulting from exposure to asbestos" is "rationally related to a legitimate government interest." Wayne, 730 F.2d at 404. See also Barwick v. Celotex Corp., 736 F.2d 946, 955-58 (4th Cir.1984); Braswell v. Flintkote Mines Ltd., 723 F.2d 527, 531 (7th Cir.1983), cert. denied, 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984).
 
 
 66
 The final facet of appellant's equal protection challenge is that the ten-year statute of repose does not rationally further the expressed purposes of the statute, as found in the preamble to Sec. 29-28-103, which states:
 
 
 67
 WHEREAS, The General Assembly finds and declares that the number of product liability suits and claims for damages and the amount of judgments, settlements and the expense of defending such suits have increased greatly in recent years, and because of these increases the cost of product liability insurance has substantially increased. The effect of increased insurance premiums and increased claims has increased product cost through manufacturers, wholesalers and retailers passing the cost of the premium to the consumer. Further, certain product manufacturers are discouraged from continuing to provide and manufacture such products because of the high cost and possible unavailability of product liability insurance; and
 
 
 68
 WHEREAS, In view of these recent trends and for the purpose of alleviating the adverse effects which these trends are producing, it is necessary to protect the public interest by enacting measures designed to make product liability insurance more readily available at a reasonable cost so that product cost may be lessened to the consumer; and
 
 
 69
 WHEREAS, In enacting this act, it is the purpose of the General Assembly to provide a reasonable time within which action may be commenced against manufacturers, and/or sellers while limiting the time to a specific period of time for which product liability insurance premiums can be reasonably and accurately calculated; and to provide other changes to expedite early evaluation and settlement of claims.... Ch. 703, 1978 Tenn.Pub.Acts 468, 468-69.
 
 
 70
 quoted in Mathis, 719 F.2d at 139. Appellant contends there is no evidence showing that the Act's expressed purposes of reducing the cost of product liability insurance and making premiums for such insurance more easily calculable are promoted by the enactment of the ten-year statute of repose.
 
 
 71
 The essential thrust of the arguments collected in the authorities cited by appellant is that escalating insurance premiums and concomitant increases in product cost are the result of national economic factors that cannot be corrected by enactment in the individual states of statutes of repose such as Sec. 29-28-103. It is claimed, for example, that "[p]roduct liability insurance rates are set on the basis of countrywide, rather than individual state, experience," and "that there is little an individual state can do to solve the problems caused by products liability." Section 101, Model Uniform Product Liability Act, 44 Fed.Reg. 62,714, 62,716 (1979). In another study, it is reported that 97% of all product related accidents occur within six years of the time the product is purchased and that a statute of repose precluding suit for actions accruing more than ten years after the product is sold will not significantly impact the product liability crisis. See Massery, Date-of-Sale Statutes of Limitations--A New Immunity for Product Suppliers, 1977 Ins.L.J. 535, 542.
 
 
 72
 There is no question that the authorities cited by appellant persuasively suggest that the legislative goals of Sec. 29-28-103 are not likely to be accomplished by the means selected. See, e.g., McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579 (1981). However, this court has already held that there is a rational relationship between this statute of repose and "the aims and goals expressed in the legislative Preamble to the Act." Mathis, 719 F.2d at 139. A statute "may not be condemned simply because it imperfectly effectuates the State's goals." San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 51, 93 S.Ct. 1278, 1306, 36 L.Ed.2d 16 (1973). Moreover, there are other legitimate purposes which the statute rationally furthers, such as limiting "claims that would be difficult to prove due to the difficulty of finding witnesses with knowledge of events of ten years before." Stutts, 574 F.Supp. at 105. We hold, therefore, that Tenn.Code Ann. Sec. 29-28-103 does not violate the equal protection clause of the fourteenth amendment.
 
 
 73
 The Tennessee Supreme Court has not addressed the constitutionality of Sec. 29-28-103. However, decisions of that court rejecting equal protection challenges to analogous statutes strongly suggest that the equal protection challenge presented in this case would be rejected by the Tennessee court. Harmon v. Angus R. Jessup Associates, Inc., 619 S.W.2d 522 (Tenn.1981); Harrison, 569 S.W.2d 822. Moreover, we see nothing in the language of the Tennessee constitutional counterpart to the Equal Protection Clause of the fourteenth amendment to lead us to conclude that the Tennessee Supreme Court would, if presented with this issue, decide the matter differently. We hold that Sec. 29-28-103 does not violate the equal protection guarantees of the federal or Tennessee constitutions.
 
 B. Open Courts
 
 74
 Article I, Sec. 17, of the Tennessee Constitution provides:
 
 
 75
 That all courts shall be open; and every man, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.
 
 
 76
 In addressing the "open courts" challenge to Sec. 29-28-103, we must look, once again, to the decisions, if any, of the Tennessee Supreme Court. Mathis, 719 F.2d at 141. While that court has not addressed this point, the Tennessee Court of Appeals has rejected an "open courts" challenge to Sec. 29-28-103. Petty v. Vulcan Iron Works, Prod.Liab.Rep. (CCH) p 9282 (Tenn.Ct.App.1982). In Mathis, 719 F.2d at 144, in rejecting the constitutional challenges to Sec. 29-28-103 raised therein, we relied on Petty, stating that, "[a]lthough not a reported or published decision, this case involving the very statute here at issue is persuasive authority as to what the highest court of Tennessee would decide if the issue had been presented to it." Where a state's highest court has not spoken on a precise issue, a federal court, sitting in a diversity case, may not disregard a decision of the state appellate court on point, "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Clutter, 646 F.2d at 1153, quoted in Mathis, 719 F.2d at 141.
 
 
 77
 There is no indication that the Tennessee Supreme Court would find the statute of repose unconstitutional under the "open courts" provision of the Tennessee Constitution, since that court has rejected such challenges to other Tennessee statutes of repose. Harmon, 619 S.W.2d at 524; Harrison, 569 S.W.2d at 827. In Harrison, the Tennessee Supreme Court noted that the "open courts" provision has consistently been interpreted by that court, not as a limitation upon the legislature, but as a mandate to the judiciary, citing Barnes v. Kyle, 202 Tenn. 529, 535-36, 306 S.W.2d 1, 4 (1957); Scott v. Nashville Bridge Co., 143 Tenn. 86, 223 S.W. 844 (1919). In Scott, the Tennessee Supreme Court rejected an "open courts" challenge to the recently enacted workmen's compensation act, holding that the legislature had the power to take away an injured worker's common law remedy.
 
 
 78
 Appellant contends that this case is distinguishable from Scott because the Tennessee legislature, by enacting the products liability statute of repose, has abolished a common law right without providing an alternative remedy, or quid pro quo, such as that involved in the enactment of the workmen's compensation act. Appellant suggests that vested rights are being completely denied by the application of the products liability statute of repose to plaintiffs injured more than ten years after the date of purchase of the product. However, as appellant acknowledges, no quid pro quo was provided by the Tennessee legislature when it passed the statutes of repose involved in Harrison and Harmon, and the Tennessee Supreme Court nevertheless found no constitutional infirmity, under the "open courts" provision, in those statutes. Moreover, no vested rights are involved here. A right of action is not vested until it has accrued. Jones v. Morristown-Hamblen Hospital Ass'n., Inc., 595 S.W.2d 816, 820 (Tenn.Ct.App.1979). The statute of repose in this case prevents a cause of action from accruing after the lapse of ten years from the date the product was first purchased. See Hartford Fire Insurance Co., 740 F.2d at 1367. The legislature "has the power to create new rights and abolish old ones so long as they are not vested." Harrison, 569 S.W.2d at 827 (quoting Dunn v. Felt, 379 A.2d 1140 (Del.Super.Ct.1977)). We are convinced that if the Tennessee Supreme Court were presented with the issue, it would uphold Tenn.Code Ann. Sec. 29-28-103 against a challenge under the "open courts" provision of the Tennessee Constitution.[9] See Stutts, 547 F.Supp. at 103.
 
 V.
 
 79
 Appellant also contends that the district court erred in granting summary judgment to the four individual defendants, Kochin's fellow TVA employees. The district court held that the individual defendants were entitled to judgment, as a matter of law, because appellant's allegations of negligence were "indisputably linked" to the employer's nondelegable duty, under Tennessee law, to provide a safe place to work. Concluding that our decision in Hamilton v. Bean, 745 F.2d 1034 (6th Cir.1984), was controlling, the district court ordered the individual defendants dismissed from the instant case.
 
 
 80
 Appellant's amended complaint alleged that:27. Defendants, Roy Howard, Bobby Bevels, Jerry Pitcock, and Art Armstrong, were negligent in the following non-exclusive respects:
 
 
 81
 A. In failing to have a pre-existing plan for the safe dismantling of the Alihoist Model 2B which was available to workers prior to the beginning of the dismantling procedure;
 
 
 82
 B. In failing to consult with the manufacturer and/or the engineers in the proper and safe method of dismantling the Alihoist Model 2B prior to beginning the dismantling procedure;
 
 
 83
 C. In failing to obtain from the manufacturer dismantling instructions for the dismantling of the Alihoist Model 2B;
 
 
 84
 D. In actively ordering, directing, and/or permitting disassembly of the Alihoist Model 2B to be performed in an unsafe and dangerous manner;
 
 
 85
 E. In failing to maintain the Alihoist Model 2B so that all parts were in good, proper and safe working order;
 
 
 86
 F. In permitting the Alihoist Model 2B to be used when the sheaveguards were inadequately and dangerously designed and were unreasonably dangerous to normal use and when said defendants knew or should have known same;
 
 
 87
 G. In failing to adequately and properly inspect the Alihoist Model 2B prior to its assembly and/or disassembly to make sure all parts were in safe and serviceable condition;
 
 
 88
 H. Other acts of negligence which may be shown through discovery or at trial; and
 
 
 89
 I. Generally, the failure of these defendants to act with the required degree of care commensurate with the existing situation.
 
 
 90
 At oral argument, counsel for appellant highlighted two allegedly negligent acts of defendant Pitcock, the foreman in charge of the disassembly crew, which counsel contended were most clearly acts of personal negligence for which Pitcock should be liable: (1) the failure to tie a "tag line" or piece of hemp rope, to the cable loop, which apparently would have prevented the wire ropes from running through the pulleys; and (2) the failure to inspect the sheave guard to ascertain whether it was adequately secured to the hoist.
 
 
 91
 Under Tennessee law, which we must apply in this diversity action:
 
 
 92
 The master owes the duty of ordinary care to prevent injury to the servant in the work, and he is bound to use such care to furnish the servant a reasonably safe place and safe appliances for the work. This duty of the master is personal, continuous, and non-delegable.
 
 
 93
 Overstreet v. Norman, 44 Tenn.App. 343, 314 S.W.2d 47, 50 (1957); see also Morriss Bros. v. Bowers, 105 Tenn. 59, 58 S.W. 328, 330 (1900); Whittle v. Atlas Powder Co., 34 F.Supp. 563, 564 (E.D.Tenn.1940).
 
 
 94
 In Hamilton, 745 F.2d 1034, the plaintiff's decedent and other TVA employees were removing steel and wooden forms for concrete "pours" which were also being used as scaffolds. The plaintiff's decedent "rode up" one of the wooden forms by remaining on it during the erection process. When the form broke free from the concrete, he fell to his death.
 
 
 95
 The plaintiff sued five supervisory employees of the TVA, alleging a breach of the employer's duty to provide a safe place to work, and that the defendants "negligently and/or wantonly controlled the conditions, methods and manner in which [the] work was being performed...." Hamilton v. Bean, 609 F.Supp. 325, 326 (W.D.Tenn.1983), aff'd, 745 F.2d 1034. The district court granted the defendants' motion for summary judgment, holding that "this suit is strictly based upon an alleged failure to provide a safe work place" and that "[t]he complaint essentially does not allege any negligence other than the failure to carry out the employer's duty of providing a safe work place." Id. at 327. On appeal, this court "agree[d] with the District Judge that neither the complaint nor a proposed amended complaint state[d] a claim of personal negligence on the part of defendants under Tennessee law," and affirmed the grant of summary judgment to defendants. Hamilton v. Bean, 745 F.2d 1034, 1035 (6th Cir.1984).
 
 
 96
 Hamilton initially appears to be distinguishable from this case because the plaintiff in Hamilton specifically alleged a breach of the employer's duty to provide a safe work place, a duty which, the plaintiff alleged, had been delegated to the individual defendants. However, the plaintiff in Hamilton, as noted above, also alleged that the defendants "negligently ... controlled the conditions, methods and manner in which [the] work was being performed." Plaintiff's allegation of negligence in this case all relate to the "conditions, methods and manner" in which the hoist was to be disassembled. Plaintiff's allegations, although more factually detailed than those in Hamilton, are legally indistinguishable therefrom. Moreover, the additional acts of negligence by Pitcock which plaintiff would have attempted to prove at trial also are directly tied to the methods and manner chosen to dismantle the hoist. We hold that the district court properly followed Hamilton in holding, "as a matter of law, that plaintiff's complaint is indisputably linked to an employer's duty to furnish a safe work place."
 
 
 97
 Appellant relies on Standard Knitting Mills v. Hickman, 133 Tenn. 43, 179 S.W. 385 (1915), and Haupt v. Cincinnati N.O. & T.P. Railway Co., 34 Tenn.App. 1, 232 S.W.2d 598 (1950), contending that the individual defendants may be liable for personal negligence involving a "transient peril," or an "operative detail" of the employer's business. Both of these cases, however, were suits against the employer, not the individual co-worker whose negligence allegedly caused the plaintiff's injuries. Thus, neither case supports the proposition that the individual defendants herein may be held to have breached a duty to Mr. Kochins.
 
 
 98
 Since our decision in Hamilton is controlling, we affirm the district court's grant of summary judgment to the individual defendants on this ground and we do not reach the other grounds raised by the individual defendants in support of the district court's judgment.
 
 
 99
 Accordingly, the decisions of the district court granting summary judgment to the Linden-Alimak defendants and the individual defendants are AFFIRMED.
 
 
 
 [1]
 In 1978, Heede International, Inc. became a wholly-owned subsidiary of Linden-Alimak A.B. of Sweden, and in 1980, the name of the subsidiary was changed to Linden-Alimak, Inc. The president of Linden-Alimak, Inc., Alan R. Tenney, stated in his affidavit that "the entity presently known as Linden-Alimak, Inc. is the same corporate entity as Heede International, Inc., the corporation that sold the Alihoist to the TVA."
 
 
 [2]
 The amended complaint also added as a defendant Mine Safety Appliances Company, the manufacturer of the hardhat worn by John Kochins when he was injured, which is not involved in this appeal
 
 
 [3]
 Appellant claims that the statute of repose should begin to run only from the date that the allegedly defective component part, the sheave guard, was sold to the TVA. The Linden-Alimak defendants do not oppose this proposition, and the district court assumed that the relevant date was the date the sheave guard was sold or delivered. Therefore, we will assume that the relevant inquiry in determining whether this action is barred by the statute of repose is concerned with the state of the proofs showing when the sheave guard, not the hoist itself, was sold to the TVA
 
 
 [4]
 Appellant suggests, without evidentiary support, that the sheave guard which injured Mr. Kochins "could have been part of another piece of equipment sold by the Linden-Alimak defendants to TVA at some point subsequent to the hoist's original sale and within the ten year period." (Brief of Plaintiff-Appellant at 11.)
 
 
 [5]
 Contrary to appellant's suggestion, see n. 4, supra, it was not the defendants' responsibility to disprove by affidavit or otherwise the purely speculative assertion that the sheave guard could have been sold to the TVA as part of some other unidentified piece of equipment manufactured and sold by the Linden-Alimak defendants. We note that appellant did not request, in the district court, an opportunity to conduct further discovery. See Celotex Corporation v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)
 
 
 [6]
 Even assuming for the sake of discussion that the instruction manual is a product under Sec. 29-28-103, the manual furnished in 1980 was a duplicate of the original provided in 1970 at the time of sale of the hoist. The duplicate was apparently a replacement for the lost or misplaced original. As such, the instructions would not be a separate and distinct "product" that would trigger the running of the statute of repose in 1980
 
 
 [7]
 Quoted, infra
 
 
 [8]
 Accord Wayne v. Tennessee Valley Authority, 730 F.2d 392, 403-04 (5th Cir.1984), cert. denied, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985), in which the Fifth Circuit rejected the due process argument that Sec. 29-28-103 unconstitutionally curtails access to the courts
 
 
 [9]
 Appellant relies on several cases from other jurisdictions in which similar provisions in other states' constitutions have been relied upon to invalidate statutes of repose. See, e.g., Kennedy v. Cumberland Engineering Co., Inc., 471 A.2d 195 (R.I.1984); Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996 (Ala.1982). However, it is not our duty in this diversity action to apply the law of these other states, but rather to decide this issue as we think the Tennessee Supreme Court would under the Tennessee Constitution. The Supreme Court of Tennessee has consistently interpreted the "open courts" provision as a mandate to the judiciary, not a limitation on the legislature, and has rejected challenges under this provision to other Tennessee statutes of repose. Moreover, the Tennessee appellate court has rejected an "open courts" challenge to the same statute involved herein. Therefore, we think it clear that the Tennessee Supreme Court would not find Sec. 29-28-103 unconstitutional under art. 1, Sec. 17 of the Tennessee Constitution