798 F.Supp. 483 (1992)
UNITED STATES of America, Plaintiff,
v.
STATE of Tennessee, et al., Defendants.
No. 92-2062-ML/A.
United States District Court, W.D. Tennessee.
August 7, 1992.
*484 *485 John R. Dunne, Asst. Atty. Gen., Civ. Rights Div., Arthur E. Peabody, Jr., Chief, Benjamin P. Schoen, Deputy Chief, Susan Bowers, William G. Maddox, Robinsue Frohboese, Robert C. Bowman, Special Litigation, U.S. Dept. of Justice, Washington, D.C., for plaintiff.
Charles W. Burson, Atty. Gen. and Reporter, Sharon S. Selby, Linda A. Ross, Asst. Attys. Gen., Nashville, Tenn., for defendants.
ORDER DENYING MOTION TO DISMISS OR IN THE ALTERNATIVE SUMMARY JUDGMENT
McCALLA, District Judge.
This cause came on before the Court on Defendants' motion to dismiss or in the alternative for summary judgment, filed March 4, 1992. By memorandum filed on June 17, 1992, the plaintiff requested an expedited hearing or ruling. Accordingly, the Court held a hearing on the motion on July 24, 1992.
This case involves alleged unconstitutional conditions of confinement and federal statutory violations at the Arlington Developmental Center ("Arlington") located in Arlington, Tennessee, pursuant to the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"). The defendants assert numerous reasons to support their motion to dismiss, but the essence of their argument is that the acts or omissions complained of do not implicate constitutional rights. For the reasons stated below, this Court disagrees and the motion to dismiss or in the alternative for summary judgment is, therefore, denied.
The defendants' motion to dismiss specifically raises the following six issues for determination by this Court: (1) Whether constitutional rights, privileges, or immunities are implicated by the acts or omissions alleged by the plaintiff pursuant to CRIPA; (2) Whether the number of residents who reside at the institution as a result of state action is sufficient to support an action pursuant to CRIPA; (3) Whether the facts as alleged in the complaint are sufficient to support the claim that the defendants are depriving the residents of Arlington, who are under the age of 22 years, a free appropriate public education pursuant to 20 U.S.C. § 1400, et seq. ("IDEA"); (4) Whether the allegations in the complaint are sufficient to support the filing of suit by the Attorney General pursuant to CRIPA; (5) Whether the suit is an impressible attempt to impose standards in excess of the constitutional minima contemplated under CRIPA; and (6) Whether the certification (pre-filing) requirements of 42 U.S.C. § 1997b(a)(2) have been complied with. Each one of these contentions will be dealt with in turn.
The defendants first and foremost argument is that the residents of Arlington, with a few exceptions, have been placed at the institution at the requests of their parents or guardians, and thus the state has not used its governmental power to force the residents to come to Arlington (such as when residents are committed by order of the court) or its power to require them to remain there. Since the state has not acted affirmatively in placing the residents at Arlington and given that there are no allegations that the state is "abusing its power" or "employing its power as an instrument of oppression," substantive due process rights are not triggered. Additionally, the defendants aver that the residents of Arlington, placed there by parents or guardians, do not have "constitutional" rights to safe conditions or a certain standard of care, but that those residents are *486 owed a duty of care under state tort law.[1]
The plaintiff on the other hand argues that there is sufficient affirmative state action such that all residents are entitled to basic constitutional rights as enumerated in Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), which include food, shelter, clothing, reasonable safety and minimum levels of training. The plaintiff stresses that the Arlington residents have been confined there by affirmative state action; that they are under the custody and control of the state pursuant to state statute (Tenn.Code Ann. § 33-5-103); that they reside in a state-owned facility where they are totally dependent on the state for their well-being; and that they are subject to significant restraints on liberty that are imposed by the state.
Under the standard of review for a motion to dismiss for failure to state a claim, all factual allegations in the complaint are taken as true and all reasonable inferences are resolved in favor of the plaintiff. Dismissal is only appropriate if it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Ang v. Procter & Gamble Co., 932 F.2d 540, 541 (6th Cir. 1991).
Generally, the Due Process Clause of the Fourteenth Amendment does not confer an affirmative right to governmental aid, DeShaney v. Winnebago County DSS, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. See, also, Youngberg v. Romeo, 457 U.S. 307, 317, 102 S.Ct. 2452, 2459, 73 L.Ed.2d 28 (1982) ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border"). However, under certain circumstances the state has a duty to provide services and care to institutionalized individuals.
When a person is institutionalized  and wholly dependent on the State  it is conceded by petitioners that a duty to provide certain services and care does exist....[2]
Youngberg at 317, 102 S.Ct. at 2459.[3] The Supreme Court, in a subsequent decision, explained the reasoning for this principle as follows:
The rationale for this principle[4] is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs  e.g., food, clothing, shelter, *487 medical care, and reasonable safety  it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.
DeShaney 109 S.Ct. at 1005-1006. It is the state's affirmative action of restraining the individual's freedom to act on his or her own behalf through institutionalization which is the "deprivation of liberty" triggering the protections of the Due Process Clause. Id. at 1006.[5]
Although the vast majority of residents at Arlington were placed there at the request of their parents or guardians, as opposed to a court commitment procedure, it is reasonable to infer from the facts as alleged that there is sufficient state action in the process used to admit residents into the facility to trigger substantive due process rights under the Fourteenth Amendment.[6]See Parham v. J.R., 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979) ("It is not disputed that a child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for medical treatment and that the state's involvement in the commitment decision constitutes state action under the Fourteenth Amendment").[7] Also, under Tennessee law, once an individual is confined to Arlington the mentally retarded person is under the "exclusive care, custody and control of the commissioner and superintendent." Tenn.Code Ann. § 33-5-103. Once the state has accepted the individual into its custody and control, the state has assumed some responsibility for the safety and well-being of the resident. See DeShaney 109 S.Ct. at 1005. Moreover, the alleged harm is caused by state actors who control every aspect of the resident's daily life, including treatment, care and his or her movement in and out of the institution.[8]
Since the plaintiff has alleged sufficient facts to support a claim of violations of substantive rights, dismissal is not appropriate. Further, when reviewing the submitted materials under a motion for summary judgment, the defendants motion must likewise fail.
Under Federal Rule of Civil Procedure 56(c), summary judgment is proper
If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Federal Rule of Civil Procedure 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986).
In the instant case the defendants have failed to show that there are no genuine issues of material fact. There is insufficient information in the record for this Court to make a determination regarding the extent of any unconstitutional conditions, if any. Summary judgment is, therefore, not proper.
Although the defendants concede that there are approximately 10-12 residents who are in the legal custody of the state, i.e., court committed, and who have constitutionally protected rights, the defendants argue that the number of such residents is insufficient to support an action under CRIPA. This argument is not persuasive. CRIPA does not contain any restrictions *488 which outline a minimum number of residents who must be affected prior to the Attorney General bringing suit. CRIPA simply gives standing for the Attorney General to file suit if he has reasonable cause to believe specific things, e.g., that residents in state institutions are being deprived of their constitutional and federal statutory rights. Since there is no minimum number of residents required under CRIPA, the defendants' argument must fail.
The defendants next contend that the facts alleged in the complaint are insufficient to support the claim that the defendants are depriving the residents of Arlington a free appropriate public education, rights secured by the Individuals with Disabilities Act ("IDEA," 20 U.S.C. § 1400, et seq.). Secondly, the defendants assert that there are no allegations of an essential element of CRIPA, such as the "pattern or practice" requirement, or any authority for the enforcement of IDEA in an action under CRIPA; and thirdly the defendants aver that the plaintiff has failed to allege "exhaustion of administrative remedies" which is an essential requirement of the IDEA.
The plaintiff propounds that all residents at Arlington are mentally retarded, that mental retardation is a disability under IDEA (20 U.S.C. § 1401(a)(1)(A)), and that IDEA establishes an "enforceable substantive right to a free appropriate public education" for every child with a disability. The plaintiff's argument is well taken. The plaintiff has set out sufficient facts upon which the claim is based and, therefore, the motion to dismiss under this argument is denied. See Fed.R.Civ.P. 8(a)(2) ("a short and plain statement of the claim showing that the pleader is entitled to relief"). Whether the defendants have already appropriately evaluated the mentally retarded children at Arlington to identify their specific educational needs is a question of material fact precluding summary judgment.
The defendant's argument that the plaintiff has failed to allege an essential element of CRIPA is also unavailing. CRIPA is a standing statute. Pursuant to § 1997a, the Attorney General has certified, among other things, that the defendants are depriving the residents of Arlington of their rights "pursuant to a pattern or practice of resistance to the full enjoyment of such rights." As long as the complaint is specific enough, as in the instant case, there is no need for the Attorney General to duplicate the contents of the certificate in the complaint.
Additionally, there is no indication of intent to exclude the IDEA from enforcement under CRIPA. CRIPA gives the Attorney General standing to sue when the institutional conditions deprive the residents of "any rights, privileges, or immunities secured or protected by the constitution or laws of the United States." 42 U.S.C. § 1997a(a) (emphasis added).
There is also no requirement that the Attorney General exhaust administrative mechanisms set forth in IDEA prior to bringing suit in federal court. Only parents, guardians, and surrogate parents are required and entitled to utilize the administrative procedures set out in IDEA. 20 U.S.C. § 1415. The Attorney General is not authorized to do so.
The defendants fourth argument is that the complaint fails to state a claim under § 1997a. More specifically, the defendants assert that the complaint fails to include specific facts which would support the following preconditions set out in § 1997a: (1) egregious or flagrant conditions; (2) any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States; (3) grievous harm; and (4) a causal connection between the egregious or flagrant conditions and the grievous harm and pattern or practice of resistance.
As agreed by all parties, CRIPA does not establish substantive rights, but only gives the Attorney General standing to file suit to enforce constitutional or statutory violations. In light of the fact that the Attorney General has certified that the "preconditions" to filing have been met, as stated in his certificate, there is no need under the facts in this case, to go behind the certificate *489 and require the plaintiff to justify his determinations. Whether the alleged conditions exist is precisely the question that this Court will determine after a hearing on the merits.
The defendants fifth argument is that the suit is an impermissible attempt to impose standards in excess of the constitutional minima contemplated under CRIPA. The defendants argue that since Arlington is certified as an Intermediate Care Facility for the Mentally Retarded under Title XIX of the Social Security Act (ICF/MR) there is a presumption that the conditions at Arlington are constitutional. "It must be presumed that the Secretary of Health and Human Services would not set standards for health care providers, who are receiving reimbursement from the federal government, below constitutional minima." Plaintiff Brief at 33, filed March 4, 1992. This Court is not persuaded.
Certification does not guarantee that constitutional minima exist. See Lelsz v. Kavanagh, 673 F.Supp. 828, 841 (N.D.Tex. 1987) ("Surveyors examine whether policies and programs exist, not whether those policies or programs result in adequate care"). Additionally, facilities with serious deficiencies are allowed to provide a "plan of correction" and maintain their certification. Thus, certification is not equivalent to a legal presumption of constitutional conditions, although it may provide some evidence on that point.
The defendants final argument is that the "preconditions" or "pre-filing" requirements of 42 U.S.C. § 1997b(a)(2) have not been complied with. As stated above, the defendants have not presented this Court with sufficient facts to warrant any further inquiry into the "pre-filing" conditions attested to in the certificate. Therefore, the defendants claim must fail with respect to this issue.
Accordingly, the defendants' motion to dismiss or in the alternative for summary judgment is hereby DENIED.
SO ORDERED.
NOTES
[1] Suit against the state would be available via the Tennessee Claims Commission established pursuant to Tenn.Code Ann. § 9-8-301 et seq.
[2] Although this duty exists, the state has discretion in determining the "nature and scope of its responsibilities." Youngberg at 317, 102 S.Ct. at 2459.
[3] Youngberg involved the substantive rights of involuntarily committed mentally retarded persons under the Fourteenth Amendment to the Constitution. The respondent in that case, who had been committed under the laws of Pennsylvania, did not challenge the commitment, but rather asserted that he had a constitutionally protected liberty interest in safety, freedom of movement and training and that the petitioners had infringed on those rights by failing to provide constitutionally required conditions of confinement. Youngberg at 314-315, 102 S.Ct. at 2457-2458. The Court determined that the respondent had constitutionally protected interests in conditions of reasonable care and safety, reasonable nonrestrictive confinement conditions, and such training as may be required by these interests. Id. at 324, 102 S.Ct. at 2462. In dicta the Court stated that the essentials of the care were "adequate food, shelter, clothing, and medical care." Id.
[4] As stated in Youngberg, the principle is the state's duty to provide certain services and care when a person is institutionalized. See DeShaney, 109 S.Ct. at 1005. In DeShaney the Court harmonized the principle stated in Youngberg with that articulated in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), as well as other opinions, and acknowledged the importance of custody.

When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.
DeShaney, 109 S.Ct. at 1005.
[5] Although the Court in DeShaney determined that the analysis under Youngberg and Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) had no applicability in its present case, the analysis is instructive in the case sub judice.
[6] Apparently, the Superintendent of Arlington may deny a request for admission pursuant to Tenn.Code Ann. § 33-6-103.
[7] Although the Parham case was a challenge to Georgia's procedures for voluntary commitment of children under the age of 18 to state mental hospitals, the Court recognized the substantial liberty interests involved when an individual is confined.
[8] Under Tenn.Code Ann. § 33-5-101(6), the Superintendent of Arlington may deny a person's request for discharge from the facility.