Jennifer SPENCE, individually and as surviving spouse of Wynne Spence, deceased, Plaintiff,

v.

MILES LABORATORIES, INC., individually and d/b/a Cutter Laboratories, Defendants.

No. CIV–1–91–185.

United States District Court, E.D. Tennessee, at Chattanooga.

Nov. 20, 1992.

Jeffrey D. Boehm, Jerry H. Summers, Chattanooga, TN, for plaintiff.

L. Jay Miller, Waring Cox, Memphis, TN, Terry O. Tottenham, Fulbright & Jaworski, Austin, TX, for defendants.

## MEMORANDUM

EDGAR, District Judge.

This Court has previously denied a motion by defendant Miles Laboratories, Inc. ("Miles") for summary judgment. This case is now before the Court on Miles' motion to reconsider. This motion raises several issues which will be discussed in this memorandum. For the reasons discussed herein, Miles' motion for summary judgment will be GRANTED and the case DISMISSED.

### I. Standard of Review

Fed.R.Civ.P. 56(c) provides that summary judgment will be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir.1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

▆▆▆▆ Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943–44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

▆▆▆▆ The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435–36. The standard for summary judgment mirrors the standard for directed verdict. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*

### II. Facts

The Court has reviewed the record in the light most favorable to plaintiff and makes the following findings of fact. Wynne Spence was born with hemophilia, an inherited disorder in which the hemophiliac's own blood lacks certain key "clotting factors" which are essential to normal blood clotting. Persons with hemophilia are subject to episodes of uncontrolled bleeding which can be fatal. Wynne Spence was first diagnosed as having Hemophilia B involving a Factor IX deficiency in June 1977 after an automobile accident. At that time, he received fresh frozen plasma and a Factor IX blood-clotting factor concentrate manufactured by Hyland known as PROPLEX. In January 1981, Mr. Spence received Factor IX blood-clotting factor concentrate while undergoing oral surgery for the removal of his wisdom teeth. Mr. Spence also received Factor IX blood clotting factor concentrate in September 1982

while being treated for an injury to his knee.

KONYNE–HT was first licensed by the United States Food and Drug Administration in October 1984. KONYNE–HT is a product manufactured and distributed by Cutter Laboratories which is a division of Miles. KONYNE–HT is a Factor IX concentrate derived from human plasma which has undergone heat treatment during its processing. Miles contends that its heat treating process inactivates any HIV in the plasma obtained from blood donors which can cause AIDS.[1]

In July and August 1986, Wynne Spence was treated with KONYNE–HT as prescribed by his family physician, Vincent Haren, M.D. The particular KONYNE–HT which was administered to Mr. Spence originated from Lot No. 20P010. The plasma from which KONYNE–HT Lot No. 20P010 was derived was obtained from various blood donors during the period of time from October 1984 through early March 1985. The plasma was processed by Miles beginning on March 18, 1985, and continuing through April 3, 1985. The resulting KONYNE–HT was heat-treated in late May and early June, 1985. KONYNE–HT Lot No. 20P010 was released by Miles for distribution on July 16, 1985, and was shipped to Erlanger Hospital in Chattanooga, Tennessee, on October 1 and 9, 1985.

The usual shelf life or date of expiration of KONYNE–HT in 1985 and 1986 was two years from the date of manufacture. The expiration date on KONYNE–HT Lot 20P010 was June 5, 1987. Wynne Spence was diagnosed as suffering from AIDS on March 22, 1990, after being tested for AIDS for the first time. Wynne Spence and Jennifer Spence filed suit against Miles in the Circuit Court of Hamilton County, Tennessee, on March 20, 1991, and Miles subsequently removed the case to this Court. Mr. Spence died on March 24, 1992, as a result of health complications associated with AIDS. This suit is being carried on by his surviving spouse, Jennifer Spence, pursuant to Tenn.Code Ann. § 20–5–106(a). Dr. Haren has rendered his expert medical opinion that Mr. Spence became infected with the AIDS virus in July and August 1986 when Mr. Spence was treated with KONYNE–HT which was manufactured by Miles using plasma from donors who had not been tested or screened for the AIDS virus. Miles disputes that KONYNE–HT caused Mr. Spence to contract AIDS. Miles asserts that its heat treatment process is completely effective for inactivating the AIDS virus and Mr. Spence was infected with the AIDS virus prior to 1986.

Plaintiff claims that Miles was negligent in not withdrawing from the market KONYNE–HT derived from blood or plasma which had not been tested or screened for the AIDS virus, and also negligent for failing to warn that the plasma it used to manufacture the KONYNE–HT administered to Mr. Spence had not been tested for the presence of the AIDS virus. In the alternative, plaintiff claims Miles is liable pursuant to Tenn.Code Ann. § 68–32–102. These claims are premised upon Tennessee law and the plaintiff has invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

---

**1.** AIDS is an acronym for the term "acquired immune deficiency syndrome." This syndrome is the final result of infection with human immunodeficiency virus ("HIV"). Infection with HIV initiates a process of gradual and accelerating destruction of the body's natural immune system. HIV can be present in human blood, plasma and serum-derived body fluids. It renders individuals more susceptible to a range of other infections and diseases which generally would not be life threatening to persons with normally functioning immune systems. HIV infection is conceptualized by scientists as a continuum of disease ranging from asymptomatic infection to end-stage AIDS. Virtually everyone infected with HIV will ultimately progress at some point to active disease. There is no standard rate or pace of progression. Some persons remain asymptomatic for long periods of time—perhaps indefinitely—while others can quickly develop end-stage AIDS and die. Although infected and capable of transmitting HIV to others, a victim can take years to develop AIDS because of the unusual, unpredictable incubation period. Periods of survival vary considerably, no one has successfully recovered from AIDS, and there is as yet no known effective cure or vaccine. The prognosis for persons with advanced stage HIV infection is extremely poor. *Harris v. Thigpen*, 941 F.2d 1495, 1502–03 n. 10 and 11 (11th Cir.1991).

### III. Analysis

#### A. Tenn.Code Ann. § 68–32–102

■ The first question to be resolved is whether plaintiff can maintain a cause of action against Miles pursuant to Tenn.Code Ann. § 68–32–102 which provides in part:

(a) All facilities collecting fresh human blood or plasma directly from an individual donor shall have such blood or plasma tested for the potential presence of the causative agent for Acquired Immune Deficiency Syndrome (AIDS).

(b) Any blood shown by appropriate medical testing to be potentially contaminated by the causative agent for AIDS shall not be used for transfusions, or for any other purposes which may pose a threat of transmission of the virus.

(c) Any person who contracts AIDS from any contaminated blood or blood product shall have a cause of action for damages, including all medical expenses, against any facility supplying untested blood, if such person can establish that such person received any untested blood, or blood product derived therefrom, from such supplier.

The statute was enacted by the General Assembly of Tennessee effective March 24, 1986. It creates a new cause of action whereby a person who contracts AIDS from any untested blood or blood product can recover damages from the supplying facility.

■ Does the AIDS statute provide the Spences a cause of action in this case? The general rule in Tennessee is that "a statute will be presumed to operate prospectively and not retroactively unless it clearly appears from the statute that the Legislature intended it to operate retroactively. A statute should not be given retroactive operation unless its words make that imperative." *Smith v. State Farm Mutual Auto Ins. Co.,* 278 F.Supp. 405, 410 (E.D.Tenn. 1967); *see also Shultz v. Dempster Systems, Inc.,* 561 F.Supp. 1230, 1232 (E.D.Tenn.1983); *Woods v. TRW, Inc.,* 557 S.W.2d 274, 275 (Tenn.1977); *Dailey v. State,* 225 Tenn. 472, 470 S.W.2d 608 (1971); *Collins v. East Tenn., Va. & Ga. Railroad Co.,* 56 Tenn. 841 (1872). Especially when a statute creates a new right, as does § 68–32–102, and the statute is not merely remedial in nature, it must be applied prospectively only. Tenn. Const. art. I, § 20; *Menefee Crushed Stone Co., Inc. v. Taylor,* 760 S.W.2d 223, 226–27 (Tenn. App.1988); *Collier v. Memphis Light, Gas & Water Div.,* 657 S.W.2d 771, 775 (Tenn. App.1983); *Anderson v. Memphis Housing Authority,* 534 S.W.2d 125, 127–28 (Tenn. App.1975); *cf. Morris v. Gross,* 572 S.W.2d 902, 907 (Tenn.1978). Miles collected the plasma, processed it, and manufactured and distributed the KONYNE–HT Lot No. 20P010 to Erlanger Hospital in 1984–1985 before § 68–32–102 became effective. There is no language in the statute which indicates that the Tennessee General Assembly intended the statute to have retroactive application. Section 68–32–102 cannot be retroactively applied to hold Miles liable in damages to plaintiff.

Plaintiff argues, however, that she can make out a viable claim under § 68–32–102 without retroactive application of the statute on the theory that the operative culpable act which gives rise to liability is neither the collection of the blood nor the failure to test it; rather it is the supplying of the contaminated blood product to the patient. It is the plaintiff's position that since the KONYNE–HT was not ultimately supplied by Erlanger Hospital to Wynne Spence until four months after the effective date of § 68–32–102, the statute is applicable without being given retrospective application. In May 1985, an enzyme linked immunosorbant assay ("ELISA") test became available which can screen blood and detect antibodies to the AIDS virus.[2] Plaintiff concludes that Miles had the means and the legal obligation under § 68–32–102 to test samples from KONYNE–HT Lot 20P010 for the presence of the AIDS virus even after it had been distributed to the hospital and after the statute's effective date.

■ Erlanger Hospital, which did supply untested blood after the effective date of

---

**2.** Deposition of Margaret Hilgartner, September 29, 1992, pp. 54–59, 75–76.

the statute, is not a defendant in this case. Miles supplied the KONYNE-HT to the hospital before the effective date of § 68-32-102. There is nothing in the language of the statute that evidences an intent to require manufacturers and suppliers of blood products to recall and test a product already on the market before the statute took effect.

Plaintiff's claim against Miles under § 68-32-102 must be dismissed.

### B. Statute of Repose

Assuming that plaintiff could have brought an action against Miles pursuant to § 68-32-102, this claim, and the alternative claim of negligently manufacturing and distributing a defective product, are time-barred. Section 68-32-102 contains no reference to a statute of limitations or statute of repose. In Tennessee, "the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations." *Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn.1984); *see also Cumberland & Ohio Co. v. First American Nat. Bank*, 936 F.2d 846, 849 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 878, 116 L.Ed.2d 783 (1992); *Electric Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990); *Kirby Farms Homeowners Ass'n v. Citicorp*, 773 S.W.2d 249, 251 (Tenn.App.1989); *Vance v. Schulder*, 547 S.W.2d 927 (Tenn.1977); *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. App.1981).

Whether formulated as a "strict liability" claim for damages resulting from untested blood products under § 68-32-102, or as a negligence claim, the plaintiff's claims manifestly relate to a product. The Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-102(6) defines a "product liability action" as

> all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: ... negligence; ... breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

The plaintiff's claims clearly fall within Tennessee's broad definition of products liability actions. *See Electric Power Bd. of Chattanooga v. Westinghouse*, 716 F.Supp. 1069, 1073 (E.D.Tenn.1988), *aff'd*, 879 F.2d 1368 (6th Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990). Consequently, they are governed by the statute of repose applicable to products liability cases, Tenn.Code Ann. § 29-28-103(a), which provides:

> Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28-3-104, 28-3-105, 28-3-202 and 47-2-725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date of which the product was first purchased for use or consumption, *or within one (1) year after the expiration of the anticipated life of the product, whichever is shorter*, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner.

(Emphasis supplied).

The term "anticipated life" is defined in Tenn.Code Ann. § 29-28-102(1) as follows: "The anticipated life of a product shall be determined by the expiration date placed on the product by the manufacturer when required by law but shall not commence until the date the product was first purchased for use or consumption." Miles was required by law to place the expiration date

**960**

on all lots of KONYNE–HT that it manufactured. 42 U.S.C. § 262(a)(2); C.F.R. 610.60(a)(4) and 610.61(d). The expiration date on the KONYNE–HT Lot No. 20P010 which was administered to Mr. Spence was June 5, 1987. Thus, plaintiff had one year from June 5, 1987, within which to timely file the products liability action against Miles. Since plaintiff did not file the complaint against Miles in the Hamilton County Circuit Court until March 20, 1991, the action is time-barred under Tenn.Code Ann. § 29–28–103(a).

■■■■■ Plaintiff argues for the application of Tennessee's one-year personal injury statute of limitations, Tenn.Code Ann. § 28–3–104. If this statute were to be applied, this suit would have been timely filed, because it was filed within one year after Mr. Spence discovered, or in the exercise of reasonable care should have discovered, that he had AIDS. *Beaman v. Schwartz*, 738 S.W.2d 632 (Tenn.App.1986). However, for the reasons discussed above, the products liability statute of repose, § 29–28–103(a) applies to plaintiff's claims. As a statute of repose, § 29–28–103(a) imposes an outer limit or ceiling upon the time within which a claim can be brought. *Wayne v. Tennessee Valley Authority*, 730 F.2d 392, 401 (5th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985); *Johnson County, Tenn. v. U.S. Gypsum Co.*, 580 F.Supp. 284, 290 (E.D.Tenn.1983); *Hawkins v. D & J Press Co., Inc.*, 527 F.Supp. 386, 388–89 (E.D.Tenn.1981); *Buckner v. GAF Corp.*, 495 F.Supp. 351, 355 (E.D.Tenn.1979). The one year personal injury statute of limitations, § 28–3–104, is specifically referenced

in the products liability statute of repose, and is to be construed *in pari materia* therewith. *Pridemark Custom Plating v. Upjohn Co.*, 702 S.W.2d 566, 570 (Tenn. App.1985); *Milligan v. American Hoist and Derrick Co.*, 622 F.Supp. 56, 58 (W.D.Tenn.1985). The judicially created discovery rule cannot extend the ceiling or absolute time limit established by the statute of repose. *Johnson County*, 580 F.Supp. at 290; *Buckner*, 495 F.Supp. at 355. *See also Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 145 (6th Cir.1983).

**C. Constitutional Guarantees of Equal Protection of the Laws and Open Courts**

■■■ Plaintiff contends that the statute of repose in § 29–28–103(a) violates the equal protection guarantees of the United States Constitution[3] and the Tennessee Constitution,[4] as well as Article I, Section 17, the "open courts" provision of the Tennessee Constitution.[5]

The Tennessee products liability statute of repose and similar statutes elsewhere, have been consistently upheld against similar constitutional challenges as a proper exercise of legislative authority to reasonably limit the exposure to liability of product manufacturers and sellers. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128 (6th Cir.1986); *Wayne*, 730 F.2d at 404; *Mathis*, 719 F.2d at 141–146; *Stutts v. Ford Motor Co.*, 574 F.Supp. 100 (M.D.Tenn.1983); *Jones v. Five Star Engineering, Inc.*, 717 S.W.2d 882 (Tenn.1986). *Cf., Alexander v. Beech Aircraft Corporation*, 952 F.2d 1215, 1224–25 n. 12 (10th Cir.1991) (Indiana statute of repose); *Hartford Fire Ins. v.*

---

**3.** Section 1 of the Fourteenth Amendment of the United States Constitution provides in part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

**4.** Article XI, Section 8 of the Constitution of Tennessee provides in part:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be, by the same law

extended to any member of the community, who may be able to bring himself within the provisions of such law.

**5.** Article I, Section 17 of the Tennessee Constitution provides:

That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

*Lawrence, Dykes, Goodenberger,* 740 F.2d 1362, 1366–73 (6th Cir.1984) (Ohio statute of repose); *Barwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir.1984) (North Carolina statute of repose); *Burris v. Ikard,* 798 S.W.2d 246, 249 (Tenn.App.1990) (Tennessee medical malpractice statute of repose); *Harrison v. Schrader,* 569 S.W.2d 822 (Tenn.1978). After reviewing the applicable law, the Court concludes that the plaintiff's attack on the constitutionality of Tenn.Code Ann. § 29–28–103 must fail.

There is one facet of the plaintiff's equal protection claim which requires further discussion. Section 29–28–103(b) provides that the time limits in the statute of repose, § 29–28–103(a), "shall not apply to any action resulting from exposure to asbestos." Plaintiff maintains that persons who contract AIDS are so similarly situated to persons who incur injuries as a result of exposure to asbestos (both diseases have long periods of latency) that they should be afforded the same legislative protection. Plaintiff argues there is no rational basis for distinguishing between AIDS and asbestos when it comes to applying the products liability statute of repose.[6] Plaintiff proposes that the solution to the problem is for this Court to extend application of the exemption in Tenn.Code Ann. § 29–28–103(b) concerning asbestos to AIDS cases.

■■■■■ The Equal Protection Clause of the Fourteenth Amendment directs that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). However, "the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* at 216, 102 S.Ct. at 2394 (quoting *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). A legislative classification does not violate equal protection when it distinguishes persons as being dissimilar upon some rational basis for the

purpose of advancing the legitimate interests of society. *Kochins,* 799 F.2d at 1138.

■■■ The state legislature has the discretion to determine what is different and what is the same. "A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler,* 457 U.S. at 216, 102 S.Ct. at 2394. In *Cleburne,* 473 U.S. 432, 105 S.Ct. 3249, the Supreme Court explained:

> The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.... When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, ... and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

*Id.* at 440, 105 S.Ct. at 3254 (citations omitted). This relatively relaxed rational basis standard reflects the "awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). The Sixth Circuit has held that state legislatures are presumed by federal courts to have acted constitutionally in making state laws. *Kochins,* 799 F.2d at 1136; *Hartford Fire,* 740 F.2d at 1366. A statutory classification or discrimination does not violate equal protection "if any state of facts reasonably may be conceived to justify it." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101,

---

6. The Tennessee statute does not mention AIDS claims, and there is no reason to believe that the legislature has specifically considered how the statute of repose should apply to AIDS or to injury resulting from any other disease with a latency period.

**962**

1105, 6 L.Ed.2d 393 (1961)). The Supreme Court of Tennessee has adopted a virtually identical equal protection standard of analysis under Article XI, Section 8 of the Tennessee Constitution. *Kochins*, 799 F.2d at 1136; *Harrison*, 569 S.W.2d at 825–26.

 The deferential rational basis standard is not applied to every legislative classification. If a classification involves invidious discrimination by either impermissibly interfering with a fundamental right or it operates to the peculiar disadvantage of an inherently suspect class, it is subject to strict judicial scrutiny to determine whether the classification has been precisely tailored to serve a compelling governmental interest. *Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566; *Plyler*, 457 U.S. at 216–17, 102 S.Ct. at 2394–95; *In re Grand Jury Proceedings*, 810 F.2d 580, 587 (6th Cir. 1987); *Kochins*, 799 F.2d at 1136. The instant case does not involve a "fundamental" right. *See Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990). The proper test for determining whether Wynne Spence was a member of a suspect class is stated in *Bowen v. Gilliard*, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987). Under *Bowen*, a plaintiff must (1) have suffered a history of discrimination; (2) exhibit obvious, immutable or distinguishing characteristics that define him as a member of a discrete group and (3) show that the group is a minority or politically powerless. *Id.* at 602–03, 107 S.Ct. at 3018. *See also Lyng v. Castillo*, 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986). Suspect classifications which require heightened judicial scrutiny are race, alienage, national origin, and sex. *Cleburne*, 473 U.S. at 440–41, 105 S.Ct. at 3254–55. Persons suffering from AIDS are not members of an inherently suspect class for purposes of equal protection analysis. *Harris v. Thigpen*, 727 F.Supp. 1564, 1570 (M.D.Ala.1990); *judgment aff'd in part, vacated in part on other grounds*, 941 F.2d 1495 (11th Cir.1991); *Cordero v. Coughlin*, 607 F.Supp. 9, 10 (S.D.N.Y. 1984); *cf., Wayne*, 730 F.2d at 404. The rational basis standard must, therefore, be used to examine § 29–28–103.

 Since plaintiff challenges the Tennessee products liability statute of repose as violating the constitutional guarantee of equal protection, she bears the burden of showing that the different classifications of asbestos and AIDS-related claims do not rationally further a legitimate state interest. *In re Grand Jury*, 810 F.2d at 587. Plaintiff has not met this burden. AIDS is significantly different from asbestos-related injuries in that persons who knowingly uses blood or blood products can take a readily available medical test within six months to determine if they have been infected with HIV. In 1984, the medical community reached a consensus that HIV is the virus which causes AIDS and that AIDS can be transmitted by blood. *See McKee v. Cutter Laboratories, Inc.*, 866 F.2d 219, 224 (6th Cir.1989). By May 1985, the ELISA test was made available which screens blood for antibodies sensitive to HIV. There is no proof that any such comparable test exists to diagnose asbestos-related diseases in their earliest stages within a short time after the exposure. There is an unusually long period of latency of up to more than 20–30 years before the onset of some asbestos-related diseases and before they can be medically diagnosed. *Ins. Co. North America v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1214 (6th Cir.1980); *Borel v. Fibreboard Paper Products*, 493 F.2d 1076, 1083–85 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Pottratz v. Davis*, 588 F.Supp. 949, 956 (D.Md. 1984); *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 523 F.Supp. 110, 115 (D.Mass.1981), *judgment modified*, 682 F.2d 12 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). Given these factors, the Court is convinced that there is a rational basis for the Tennessee Legislature to exempt asbestos-related injuries from the products liability statute of repose and not to exempt other long-term continuing type injuries such as becoming infected with HIV from contaminated blood products. *See, e.g., Wayne*, 730 F.2d at 404 (distinguishing asbestos from phosphate slag-related injuries under equal protection analysis); *Pottratz*,

588 F.Supp. at 954–56 (distinguishing asbestos from Dalkon Shield intra-uterine contraceptive device).

Wynne Spence's death is indeed tragic. In his case, Tenn.Code Ann. § 29–28–103(a) effectively prevents him from litigating his claim against Miles. However, the statute represents public policy which affords plaintiffs what the legislature deems to be a reasonable time to present their claims; and it protects defendant and the courts from having to deal with stale cases where the search for the truth and justice may be seriously impeded by the death or disappearance of witnesses, fading memories, disappearance of documents or other loss of material evidence. *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). In the preamble to § 29–28–103, the Tennessee General Assembly stated that the purpose of the statute of repose is to protect the public interest by making product liability insurance more readily available at a reasonable cost to manufacturers and sellers so that the cost of products may be lessened to consumers. The statute provides a reasonable time within which an action to recover damages may be commenced against a manufacturer or seller while limiting liability to a specific period of time so that product liability insurance premiums can be reasonably and accurately calculated. Ch. 703, Tenn.Pub.Acts 468–469; *Kochins*, 799 F.2d at 1139; *Mathis*, 719 F.2d at 139. The Tennessee statute of repose, then, was enacted for stated purposes. It is the role of the legislature, not this Court, to pass on the wisdom of that purpose. *Hargraves v. Brackett Stripping Machine Co.*, 317 F.Supp. 676, 683 (E.D.Tenn.1970).

### D. No Irreconcilable Conflict

 Plaintiff next contends that Tenn. Code Ann. § 29–28–103(a) should not be applied to AIDS cases because it would create an irreconcilable conflict with Tenn. Code Ann. § 68–32–102. The Tennessee Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation. *Jenkins v. Loudon County*, 736 S.W.2d 603, 608 (Tenn.1987); *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 5 (Tenn.1986). According to

plaintiff, it is inconceivable that the Tennessee Legislature would create a new cause of action under § 68–32–102 for its citizens who contract AIDS through contaminated blood products but intend that the products liability statute of repose would apply so that the vast majority of AIDS cases would have already expired by the time the cause of action accrued. The action accrues when the person contracts AIDS. The AIDS syndrome is the final stage or result of the HIV infection and the symptoms of AIDS are usually manifested after an indefinite, protracted incubation period often lasting years. In other words, an individual who is infected with the AIDS virus may show no signs of having the disease and may not actually develop AIDS for many years. Thus, plaintiff argues that if the products liability statute of repose is applied here, the policy underlying § 68–32–102 of creating a cause of action for persons suffering from AIDS is frustrated or thwarted before it can apply because the statute of repose would extinguish the right to maintain an action under § 68–32–102 before the plaintiff is injured by contracting AIDS.

 In analyzing this question, the Court is guided by the rules of statutory construction and the law governing implied amendment or repeal summarized by the Supreme Court of Tennessee in *Jenkins*, 736 S.W.2d at 607–08. Where two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication but only to the extent of the inconsistency between them. However, the repeal of a statute by implication is not favored and there must be an irreconcilable conflict or repugnancy between the statutes that is plain and unavoidable to work a suspension of the earlier statute. Statutory provisions *in pari materia* must be construed together and the construction of one statute, if doubtful, may be aided by the consideration of the words and legislative intent indicated by the other statute. Furthermore, harmonious effect should be given to all statutes on a subject whenever reasonably possible. Where the repealing effect of a statute is doubtful, the statute is strictly con-

strued to effectuate its operation consistent with the previous legislation. Where the later statute does not cover or embrace all of the provisions of the earlier one, and does not manifest a clear and unmistakable intention to provide and substitute a new system for the old, the provisions of the earlier statute not clearly covered by the later statute are unaffected and still in force. *Id.*

When these principles are applied in this case, the Court concludes that there is not an irreconcilable conflict between the products liability statute of repose and Tenn.Code Ann. § 68–32–102. Section 68–32–102 contains neither a statute of limitations nor a statute of repose. The Tennessee Legislature has not manifested a clear, unmistakable intent in § 68–32–102 to repeal or amend by implication the products liability statute of repose. There is no irreconcilable conflict between the two statutes and the Court concludes that Tenn. Code Ann. § 29–28–103(a) applies to causes of action brought pursuant to § 68–32–102. Tenn.Code Ann. § 68–302–102 can and should be construed to be consistent and harmonious with § 29–28–103(a) in the absence of a clear irreconcilable conflict.

### E. Fraudulent Concealment

Plaintiff next argues that the products liability statute of repose should be tolled under the equitable doctrine of fraudulent concealment. This is a diversity case and Tennessee's law of fraudulent concealment applies to the plaintiff's state law claims. *Jarrett v. Kassel,* 972 F.2d 1415, 1424 n. 6 (6th Cir.1992); *Campbell v. Upjohn Co.,* 676 F.2d 1122, 1126 (6th Cir. 1982). Where a statute of repose defense has been asserted and established by the defendant, the burden of proof shifts to the plaintiff to establish the exception to the statute of fraudulent concealment. *Benton v. Snyder,* 825 S.W.2d 409, 414 (Tenn. 1992).

In order to meet her burden, the plaintiff must prove that her cause of action was known to and fraudulently concealed by Miles. *Id.; Ray v. Scheibert,* 224 Tenn. 99, 450 S.W.2d 578, 580 (1969). The essential element of concealment may consist of withholding information where there is a duty to disclose by virtue of a confidential relationship or making use of some device to mislead thus involving act and intention. *Benton,* 825 S.W.2d at 414. A plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action or committed some overt act to conceal the plaintiff's cause of action and that the plaintiff could not have discovered the existence of the cause of action despite exercising reasonable diligence. *Duncan v. Leeds,* 742 F.2d 989, 992 (6th Cir.1984); *Id.; Vance,* 547 S.W.2d at 930. "Generally, the affirmative action on the part of a defendant must be something more than mere silence or a mere failure to disclose known facts. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry, *or else there must be a duty resting on the party knowing such facts to disclose them.*" *Benton,* 825 S.W.2d at 414 (emphasis in original). *See also Electric Power Bd.,* 879 F.2d at 1377; *Soldano v. Owens–Corning Fiberglass Corp.,* 696 S.W.2d 887, 889 (Tenn.1985).

Plaintiff contends that Miles engaged in fraudulent concealment by not issuing written warnings with its KONYNE–HT that the blood donors who provided the plasma used in manufacturing KONYNE–HT had not been tested for presence of the AIDS virus. However, the Court concludes that the doctrine of fraudulent concealment is not applicable under these facts and does not toll the products liability statute of repose. The running of the statute is not tolled by the mere ignorance and failure of Wynne and Jennifer Spence to discover the existence of their cause of action. *Soldano,* 696 S.W.2d at 889. Mere silence by Miles or the failure by Miles to disclose known facts does not constitute sufficient affirmative action of concealment required to prove fraudulent concealment. Moreover, there was no confidential or fiduciary relationship between Miles and Wynne Spence such as physician and patient which imposed a higher duty on Miles to disclose

the information about untested blood donors to Mr. Spence.

Miles contends that, assuming *arguendo*, it did take affirmative action and committed an overt act of fraudulent concealment, there is no basis for the Court to read into Tenn.Code Ann. § 29–28–103 an exception for fraudulent concealment which would toll the statute of repose. Miles points out that in two similar statutes of repose the Tennessee Legislature has expressly provided an exception for fraudulent concealment, Tenn.Code Ann. § 29–26–116(a)(3)[7] (medical malpractice), and Tenn.Code Ann. § 28–3–205(b)[8] (defective improvement of real estate). Miles argues that the absence of a fraudulent concealment exception in Tenn.Code Ann. § 29–28–103 necessarily leads to the conclusion that no such exception was intended or exists, and since § 29–28–103 sets an absolute outer time limit after which no cause of action can be brought, the Court should not read the doctrine of fraudulent concealment into the statute because it would undermine the legislature's intent and purpose in enacting the products liability statute of repose.

The Tennessee courts have not addressed this particular question. Since the doctrine of fraudulent concealment is not applicable to the facts of this case, this issue need not be addressed.

### *F. Pretrial Order*

■■■ Finally, plaintiff contends that Miles has waived the statute of repose defense because it was not specifically raised in the final pretrial order.

On June 17, 1991, Miles filed its answer to the complaint wherein it generally raised the affirmative defense that the complaint is barred by the applicable statute of limitations and the statute of repose. (Court File No. 7). The answer does not cite or refer to a specific statute. In its first motion for summary judgment (Court File No. 61) and in the final pretrial order entered on September 14, 1992 (Court File No. 69), Miles contended that this case is a medical malpractice action and the plaintiff's claims are time-barred by the statute of repose applicable to medical malpractice actions, Tenn. Code Ann. § 29–26–116(a)(3). Miles did not mention Tenn.Code Ann. § 29–28–103(a), the statute of repose for products liability actions.

The Court denied Miles' motion for summary judgment on September 25, 1992, ruling *inter alia* that this is not a medical malpractice action and § 29–26–116(a)(3) is not applicable. (Court File Nos. 76, 77). Eleven days later on October 6, 1992, Miles filed its motion to reconsider wherein it raised for the first time the specific argument that the complaint is time-barred by the products liability statute of repose. Plaintiff contends that Miles should not be permitted to raise the products liability statute of repose two weeks prior to the trial which was scheduled to begin on October 20, 1992.

■■■ The procedures governing pretrial conferences are set forth in Fed.R.Civ.P. 16. Rule 16(e) provides:

> **Pretrial Orders.** After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Paragraph 7 of the final pretrial order states that it supplants the pleadings. (Court File No. 69, p. 8). It is well settled that issues incorporated in a final pretrial order may supersede the pleadings. *Moore*

---

**7.** Tenn.Code Ann. § 29–26–116(a)(3) provides: "In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the cause of action exists."

**8.** Tenn.Code Ann. § 28–3–205(b) provides: "The limitation hereby provided shall not be available as a defense to any person who shall have been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying, in connection with such an improvement, or to any person who shall wrongfully conceal any such cause of action."

v. *Fenex, Inc.*, 809 F.2d 297, 300 (6th Cir.), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987); *Howard v. Kerr–Glass Mfg. Co.*, 699 F.2d 330, 333 (6th Cir.1983). However, the Court has the discretion to modify the pretrial order to permit a party to raise a new matter in order to prevent manifest injustice. *Daniels v. Board of Educ. of Ravenna City School*, 805 F.2d 203, 210 (6th Cir.1986); *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27–28 (9th Cir.1980). As the Fourth Circuit stated in *Barwick*, 736 F.2d 946: "The requirements of the pretrial order are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interest of justice. However, the terms of the order must be firmly and fairly enforced by the district judge if it is to serve the purpose of pretrial management designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* at 954–55, *quoting* Fed.R.Civ.P. 1.

In the instant case, the Court concludes that Miles should be permitted to raise the affirmative defense of the products liability statute of repose even though it was not specifically mentioned in the final pretrial order. Miles did generally assert the defense that the complaint is time-barred by the applicable statute of repose in its answer. Once the Court ruled that this case is not a medical malpractice action, Miles did file its motion asserting the products liability statute of repose prior to commencement of trial. Although Miles should have raised the products liability statute of repose both in its first motion for summary judgment and the final pretrial order, it would be manifestly unjust under these facts and circumstances to rule that Miles has waived the defense and is strictly bound by the final pretrial order.

Accordingly, an order will enter GRANTING summary judgment in favor of the defendants and dismissing the plaintiff's claims.