37 F.3d 1185
 Jennifer SPENCE, individually and as surviving spouse of
Wynne Spence, deceased, Plaintiff-Appellant, Cross-Appellee,
v.
MILES LABORATORIES, INC., individually and doing business as
Cutter Laboratories, Defendant-Appellee, Cross-Appellant,
Attorney General, State of Tennessee, Intervenor.
 Nos. 93-5073, 93-5074.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 3, 1994.
Decided Oct. 19, 1994.
 
 Jerry H. Summers, Summers, McCrea & Wyatt, Jeffrey D. Boehm (argued and briefed), O'Neal, Walker & Boehm, Chattanooga, TN, for plaintiff-appellant, cross-appellee.
 Louis J. Miller (briefed), Louis F. Allen (briefed), Waring Cox, Memphis, TN, Terry O. Tottenham (argued and briefed), Fulbright & Jaworski, Austin, TX, Geoffrey R.W. Smith (briefed), McDermott, Will & Emery, Washington, DC, for defendant-appellee, cross-appellant.
 Jennifer Helton Small, Asst. Atty. Gen. (briefed), Sue A. Sheldon (argued), Office of the Atty. Gen., Gen. Civ. Div., Nashville, TN, for intervenor.
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and JOINER, District Judge.*
 SUHRHEINRICH, Circuit Judge.
 
 I. Introduction
 
 1
 In March of 1990, Wynne Spence, a hemophiliac, was diagnosed with AIDS. Wynne and his wife Jennifer brought suit against defendant Miles Laboratories, Inc., individually and doing business as Cutter Laboratories, claiming Wynne had contracted the disease from a blood-clotting factor manufactured by Miles. The district court granted summary judgment to Miles, ruling that the Tennessee AIDS statute could not be applied retroactively to hold Miles liable; and assuming it did apply, this claim, and the alternative claim of negligently manufacturing and distributing a defective product, were time-barred. Plaintiff appeals these rulings. Defendant Miles has filed a protective cross-appeal regarding the district court's denial of summary judgment on the issue of plaintiff's ability to prove causation. Assuming, without deciding, that the Tennessee AIDS statute applies, we likewise hold that both the statutory and the common-law claims are time-barred by the applicable statute of repose. We therefore do not reach the issue raised in Miles' cross-appeal.
 
 II. Facts
 
 2
 The facts are thoroughly set forth in the district court's opinion at 810 F.Supp. 952 (E.D. Tenn.1992), and will be merely capsulized here. Wynne Spence was born with Hemophilia B, involving a Factor IX deficiency, an inherited disorder in which his blood lacks certain key "clotting factors" which are essential to normal blood clotting. Spence was first diagnosed as a hemophiliac in 1977, following an automobile accident. At the time he received fresh frozen plasma and a Factor IX blood-clotting factor concentrate manufactured by Hyland known as Proplex. Spence again received Factor IX blood-clotting factor concentrates in January 1981, while undergoing oral surgery for the removal of wisdom teeth, and in September 1982, while being treated for a knee injury. In July and August 1986, following another knee injury, Spence received Konyne-HT, a blood-clotting factor concentrate manufactured by Miles. The Konyne-HT which Spence received originated from Lot. No. 20P010.
 
 
 3
 Konyne-HT was first licensed by the United States Food and Drug Administration in October 1984. Konyne-HT is a Factor IX concentrate derived from human plasma which has undergone heat treatment during its processing. The plasma from which Lot. No. 20P010 was derived was collected between October 1984 and early March 1985. Miles processed the plasma beginning on March 18, 1985, continuing through April 3, 1985. The derivative Konyne-HT was heat-treated in late May and early June 1985, and released by Miles for distribution on July 16, 1985. It was shipped to Erlanger Hospital in Chattanooga, Tennessee, on October 1 and 9, 1985.
 
 
 4
 It is now widely-accepted (and the parties do not disagree) that the medical and scientific communities did not reach a consensus that AIDS could be transmitted by blood until 1984, see, e.g., McKee v. Miles Labs., Inc., 675 F.Supp. 1060 (E.D.Ky.1987), aff'd, 866 F.2d 219 (6th Cir.1989); Kozup v. Georgetown Univ., 663 F.Supp. 1048, 1051-53 (D.D.C.1987), aff'd in relevant part, 851 F.2d 437, 438 (D.C.Cir.1988); Note, Dana J. Finberg, Blood Bank and Blood Products Manufacturer Liability in Transfusion-Related AIDS Cases, 26 U.Rich.L.Rev. 519 (1992), and identified the virus HTLV-III as the cause of AIDS. McKee, 675 F.Supp. at 1063; Kozup, 663 F.Supp. at 1052. By May 1985, an enzyme-linked immunosorbant assay ("ELISA") test, which screens for the antibodies sensitive to HTVL-III, was made commercially available. McKee, 675 F.Supp. at 1063; Kozup, 663 F.Supp. at 1052.
 
 
 5
 In 1986, the Tennessee legislature enacted a statute which requires all facilities collecting fresh human blood or plasma from individual donors to test for the potential presence of the causative agent for AIDS; and authorizes any person who contracts AIDS from contaminated blood or blood products to sue for damages. See Tenn.Code Ann. Sec. 68-32-102 (1992). The statute took effect March 26, 1986.
 
 
 6
 Plaintiff was diagnosed with AIDS on March 27, 1990. Spence and his wife filed suit against Miles in the Circuit Court of Hamilton County, Tennessee, on March 20, 1991. Spence complained that Miles was negligent in not withdrawing the untested Konyne-HT from the market, and also negligent in failing to warn that the plasma used to manufacture the blood product administered to Spence had not been tested for the presence of the AIDS virus. Alternatively, Spence asserted that Miles was liable under the Tennessee AIDS statute. Miles timely removed the case to federal court on diversity grounds. Spence died of health complications associated with AIDS on March 24, 1992. This suit is currently being carried on by his surviving spouse pursuant to Tenn.Code Ann. Sec. 20-5-106(a).
 
 
 7
 The district court initially denied Miles' motion for summary judgment, rejecting defendant's claim that plaintiff had failed to create a question of fact as to causation. On reconsideration, however, the court ruled that (1) the Tennessee AIDS statute could not be applied retrospectively to hold Miles liable; (2) assuming it did apply, the most applicable statute of limitations, the statute of repose for products liability actions, barred the statutory claim as well as plaintiff's negligence claims; and (3) the statute of repose does not violate equal protection by differentiating between asbestos and AIDS-related claims. This timely appeal followed.
 
 III. Standard of Review
 
 8
 Because this is a diversity action, we look to the forum state's choice of law provision. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Electric Power Bd. of Chattanooga v. Monsanto Co., 879 F.2d 1368, 1375 (6th Cir.1989); cert. denied, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990); Tennessee River Pulp & Paper Co. v. Eichleay Corp., 708 F.2d 1055, 1057 (6th Cir.1983). Here, the parties agree that the substantive law of Tennessee applies. If the state courts have not addressed the issues presented, "a federal court is obligated to express its best judgment, based on all the available information, as to what the courts in that state would hold if they were faced with the issue." Eichleay Corp., 708 F.2d at 1057 (citations omitted). Further, the procedural law of the forum generally applies, including its statute of limitations. Electric Power Bd., 879 F.2d at 1375.
 
 
 9
 We review the district court's grant of summary judgment de novo. Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 912 (6th Cir.1991). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A district court's determinations of state law are reviewed de novo. Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
 
 IV. Analysis
 
 10
 The first issue presented on appeal concerns the applicability of the Tennessee AIDS statute, Tenn.Code Ann. Sec. 68-32-102, to plaintiff. It provides in part:
 
 
 11
 68-32-102. Facilities to test for AIDS--Contaminated blood--Cause of action for AIDS from untested blood.--
 
 
 12
 (a) All facilities collecting fresh human blood or plasma directly from an individual donor shall have such blood or plasma tested for the potential presence of the causative agent for Acquired Immune Deficiency Syndrome (AIDS).
 
 
 13
 (b) Any blood shown by appropriate medical testing to be potentially contaminated by the causative agent for AIDS shall not be used for transfusions, or for any other purposes which may pose a threat of transmission of the virus.
 
 
 14
 (c) Any person who contracts AIDS from any contaminated blood or blood product shall have a cause of action for damages, including all medical expenses, against any facility supplying untested blood, if such person can establish that such person received any untested blood, or blood product derived therefrom, from such supplier.
 
 
 15
 Tenn.Code Ann. Sec. 68-32-102 (1992). The statute was enacted by the General Assembly of the State of Tennessee, effective March 24, 1986. The district court ruled that the AIDS statute did not apply to Miles because Miles had collected the plasma and processed it, and manufactured and distributed the Konyne-HT Lot. No. 20P010 before Sec. 68-32-102 became effective. Alternatively, plaintiff argued that even though Miles had supplied the Konyne-HT to the hospital before the effective date of Sec. 68-32-102, plaintiff was not supplied with the blood until four months after the effective date of the statute, and that subsection (c) should therefore apply. The district court also rejected this argument, stating that "nothing in the language of the statute [ ] evidences an intent to require manufacturers and suppliers of blood products to recall and test a product already on the market before the statute took effect." Spence v. Miles Labs., Inc., 810 F.Supp. 952, 959 (E.D. Tenn.1992). The district court reasoned that, under Tennessee law, a statute is presumed to operate prospectively absent a clear legislative intent that it be given retroactive application, Woods v. TRW, Inc., 557 S.W.2d 274, 276-77 (Tenn.1977); Shultz v. Dempster Sys., Inc., 561 F.Supp. 1230, 1232 (E.D. Tenn.1983), and that this is especially true when a statute creates a new right, and is not merely remedial in nature. See, e.g., Menefee Crushed Stone Co. v. Taylor, 760 S.W.2d 223, 227 (Tenn.Ct.App.1988).
 
 
 16
 Application of the Tennessee AIDS statute to the unique facts of this case raises a question of first impression, with little guidance to be had from either the express language or the legislative history of the statute. We decline to address this issue, however, because the question can be resolved on narrower grounds.
 
 
 17
 In short, we believe, as did the district court, that even if the statute does apply, plaintiff's claim is nonetheless time-barred. Because Sec. 68-32-102 does not reference a statute of limitations or repose, we look to the "gravamen" of the action, rather than any designation as either contract or tort, in determining what limitations period is controlling. See Pera v. Kroger Co., 674 S.W.2d 715, 719 (Tenn.1984); Electric Power Bd., 879 F.2d at 1375. As noted by the district court, "[w]hether formulated as a 'strict liability' claim for damages resulting from untested blood products under Sec. 68-32-102, or as a negligence claim, the plaintiff's claims manifestly relate to a product." Miles Labs., 810 F.Supp. at 959. A product liability action under Tennessee law is broadly defined to include
 
 
 18
 all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.
 
 
 19
 Tenn.Code Ann. Sec. 29-28-102(6).
 
 Plaintiff's complaint alleges that
 
 20
 --"Konyne, when manufactured and sold by Cutter and when administered to Wynne Spence, was a defective product";
 
 
 21
 --"Cutter has failed to give Wynne Spence proper and sufficient warnings of the dangerous propensities and hazards accompanying the use of Konyne"; and
 
 
 22
 --"Konyne, when manufactured and sold by Cutter was not merchantable and reasonably suited to the use intended."
 
 
 23
 Plaintiff's various claims of defective manufacture, failure to warn, and implied warranties of merchantability and fitness fall squarely within the confines of the Tennessee Products Liability Act. Thus, characterized as such, plaintiff's claims are subject to, and consequently barred by, the statute of repose which governs product liability actions. It provides:
 
 
 24
 (a) Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by Secs. 28-3-104, 28-3-105, 28-3-202 and 47-2-725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner.
 
 
 25
 Tenn.Code Ann. Sec. 29-28-103(a).
 
 
 26
 Under Tenn.Code Ann. Sec. 29-28-102(1), the "anticipated life" of a product "shall be determined by the expiration date placed on the product by the manufacturer when required by law but shall not commence until the date the product was first purchased for use or consumption." The "expiration date" must be placed on each package of blood, blood components or derivatives, see 42 U.S.C. Sec. 262(a); 21 C.F.R. Secs. 610.60(a)(4), 610.61(d), and the listed expiration date of Konyne-HT Lot No. 20P010 was June 5, 1987. Thus, as correctly noted by the district court, plaintiff had one year from June 5, 1987, within which to file his products liability claim against Miles. Miles Labs., 810 F.Supp. at 960.
 
 
 27
 Notwithstanding, plaintiff argues that the one-year statute of limitations for injuries to the person should apply. See Sec. 28-3-104 (1993). If plaintiff is correct, the suit would have been timely because it was filed within one year after Spence discovered, or in the exercise of reasonable care, should have discovered, that he had AIDS. Plaintiff's argument that the personal injury limitations period, rather than the products liability statute of repose, should apply is premised upon a third statute, Tenn.Code Ann. Sec. 47-2-316(5), which reads:
 
 
 28
 (5) The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues (such as corneas, bones, or organs), whole blood, plasma, blood products, or blood derivatives. Such human tissues, whole blood, plasma, blood products, or blood derivatives shall not be considered commodities subject to sale or barter, and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service.
 
 
 29
 Plaintiff argues that because the statute bars strict liability claims for the sale of blood products,[1] the statute of repose for product liability actions should not be applied to the sale of blood products. In other words, plaintiff contends that because Sec. 47-2-316(5) treats a cause of action based upon a blood product differently from other products cases, then it should not be held to the limitations period imposed on product liability claims.
 
 
 30
 Plaintiff's argument has only a superficial appeal. First of all, merely because a legislature decides to preclude sales-based liability claims, i.e. implied warranty and strict liability, for blood and its derivatives because fault does not enter the equation, it does not necessarily follow that the legislature intends that blood and blood products be considered as something other than commodities or products for all purposes. As some courts have noted, there are important public policy reasons for restricting liability-without-fault theories of recovery when it comes to blood. See, e.g., Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 785 P.2d 815, 822 (1990)("societal need to ensure an affordable, adequate blood supply furnishes a persuasive reason for distinguishing between victims of defective blood and victims of other defective products"); Miles Labs., Inc. v. Doe, 315 Md. 704, 556 A.2d 1107, 1121-22 (1989)("considering the unique nature of blood as a lifesaving, life-sustaining substance without any apparent substitutes, we are of the view that when it is sold, whether commercially or otherwise," strict liability in tort does not apply).[2] Furthermore, the fact that the Tennessee legislature included only the "transplanting, injection, transfusion or other transfer of such substances," in the definition of a "medical service," while deliberately excluding "sale, procurement, processing, distribution or use," reflects an intent to bar only strict liability and warranty-based claims but to otherwise consider blood and its derivatives a product and not a service for liability purposes.[3] In sum, we think that the district court correctly concluded that plaintiff's negligence-based cause of action is governed by the products liability statute of repose, rather than the one-year limitations period for personal injuries.[4] Thus, both plaintiff's statutory claim and negligence claim are time-barred by Sec. 29-28-103(a).
 
 
 31
 Plaintiff also argues that the statute of repose violates the equal protection guarantees of the United States and Tennessee Constitutions as well as Article 1, Section 17 of the Tennessee Constitution, the "open courts" provision. Specifically, plaintiff argues that persons exposed to AIDS should be treated like asbestos victims, who are exempted from the limitations of 29-28-103(a),[5] because both diseases involve long latency periods. Plaintiff waived the issue at oral argument however; and in any event, this argument is best directed at the Tennessee legislature. Finally, we agree with, and therefore adopt, the district court's holdings as to plaintiff's claims of fraudulent concealment and waiver.
 
 
 32
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Both the Sixth Circuit and the Tennessee Court of Appeals have ruled that under this section neither warranty liability nor strict liability in tort can arise from a transfusion of blood. Sawyer v. Methodist Hosp., 522 F.2d 1102, 1105 (6th Cir.1975); McDaniel v. Baptist Memorial Hosp., 469 F.2d 230 (6th Cir.1972); St. Martin v. Doty, 493 S.W.2d 95 (Tenn.Ct.App.1972). Furthermore, at least 48 states have enacted similar statutes barring strict liability in such cases. Alinka F. Baker, Comment, Liability Without Fault And The AIDS Plague Compel A New Approach To Cases Of Transfusion-Transmitted Disease, 61 U.Colo.L.Rev. 81, 85 & n. 19 (1990)
 
 
 [2]
 However, now that it is possible to detect the presence of the HIV virus in blood with virtually 100% accuracy, the reasons for shielding blood and blood derivatives seemingly have evaporated. See Note, Dana J. Finberg, Blood Bank and Blood Products Manufacturer Liability in Transfusion-Related AIDS Cases, 26 U.Rich.L.Rev. 519 (1992); Baker, supra note 1, at 82; Kozup v. Georgetown Univ., 663 F.Supp. 1048, 1052-53 (D.D.C.1987) (citations omitted), aff'd, 851 F.2d 437 (D.C.Cir.1988)
 
 
 [3]
 In this regard we note that plaintiff did not sue the hospital. See Sawyer, 522 F.2d at 1105-06 (plaintiff's claim against hospital for negligence in testing blood for hepatitis evaluated under medical standards accepted in the community)
 
 
 [4]
 We do not, however, join in that aspect of the district court's holding that even if the one-year personal injury statute applied, it would still be barred by the products liability statute of repose, because Sec. 29-28-103(a) references Sec. 28-3-104, and is to be construed in pari materia therewith. See 810 F.Supp. at 960. Plaintiff is arguing negligent service, which would fall under subsection (a), rather than injury caused by a deficient product, which is covered under subsection (b). We think the reference in Sec. 29-28-103(a) implicates only subsection (b) of Sec. 28-3-104
 
 
 [5]
 See Tenn.Code Ann. Sec. 29-28-103(b)(1993)